## QUINN v. DIMOND et al.

### (Circuit Court of Appeals, Ninth Circuit. February 24, 1896.)

### No. 247.

1. APPEAL—TRIAL WITHOUT JURY—SPECIAL AND GENERAL FINDINGS.

In an action involving the question whether plaintiffs were wholesale liquor dealers, within the meaning of the internal revenue laws, a trial was had to the court without a jury. The court made special findings of fact, detailing the manner in which plaintiffs, as commission merchants, had purchased liquors to fill the orders of certain foreign correspondents, and then added a general finding that, "in executing such orders in the manner already stated, the plaintiffs were not engaged in the business of wholesale liquor dealers, nor did they at any time sell or offer for sale foreign or domestic distilled spirits or wines in quantities of not less than five wine gallons at the same time." *Held*, that this was only the court's interpretation of the facts specially found, and did not preclude the appellate court from considering those facts, and determining therefrom whether the judgment was erroneous. Morrow, District Judge, dissenting.

2. INTERNAL REVENUE—WHO ARE WHOLESALE LIQUOR DEALERS.

Commission merchants who, at the request of foreign correspondents, occasionally purchase liquors in quantity, and take charge of shipping the same, and either charge the costs and their commissions upon their books to the account of such correspondents, or draw upon them for the full amount of the purchase price with costs and commissions, are "wholesale liquor dealers," within the meaning of Rev. St. § 3244, and liable, as such, to the special tax. Morrow, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action at law by W. H. Dimond and others against John C. Quinn, collector of internal revenue, to recover money paid, under protest, as an assessment under the internal revenue laws. The case was tried to the court without a jury, and the court after making findings of fact and of law, rendered judgment for plaintiffs. Defendant brings error.

H. S. Foote and Samuel Knight, for plaintiff in error.

Page & Eells and Chickering, Thomas & Gregory, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and MORROW, District Judge.

GILBERT, Circuit Judge. The defendants in error were the plaintiffs in an action brought against John C. Quinn, collector of internal revenue for the First district of California, to recover the sum of $300, paid, under protest, upon an assessment made against them by the commissioner of internal revenue, under the internal revenue laws of the United States, upon the ground that the said plaintiffs were wholesale liquor dealers. The plaintiffs, in their complaint, set forth the transactions which were held to render them liable to the tax, and stated that, during the period for which they had been so assessed, they were commission merchants, and that, as the agents of certain principals, residing in Mexico and the states of Central America, they had purchased, from time to time, from wholesale liquor dealers in San Francisco, for shipment

to their principals, wines and liquors in quantities of not less than five gallons, as ordered by their principals, and they alleged:

"That such purchases were uniformly made at the lowest obtainable market prices for the account of such principals, and not for the account of plaintiffs; that such purchases were invoiced and charged to plaintiffs by the vendors thereof, in the ordinary course of trade, and for the sole reason that the principals of said plaintiffs were unknown to said vendors, and had no established credit with them; that the said wines and liquors, so purchased, were thereafter received, and at once shipped by plaintiffs to their foreign principals, and a usual mercantile commission charged to such principal for the services of plaintiffs in acting as purchasing agents."

It was the judgment of the circuit court that the plaintiffs were not subject to the tax.

The sole question presented on the writ of error is whether or not, under the facts, the defendants in error were wholesale liquor dealers, within the meaning of section 3244 of the Revised Statutes, which provides as follows:

"Wholesale liquor dealers shall pay $100. Every person who sells or offers for sale foreign or domestic distilled spirits or wines, in quantities of not less than five wine gallons at the same time, shall be regarded as a wholesale liquor dealer."

Section 3242 denounces a penalty against every person who carries on the business of a rectifier, wholesale liquor dealer, etc., without having paid the special tax provided in the foregoing section. The facts as found by the trial court were, that the defendants in error—

"Did occasionally purchase, from wholesale dealers, at the request of foreign correspondents, such quantities of wine or liquor as might be specifically named in such request, in quantities frequently being not less than five wine gallons at the same time. Such orders were carried out by them as follows: On receipt thereof the plaintiffs purchased the specific amount called for by such orders from the wholesale liquor dealers, who thereupon prepared the package for shipment to the foreign country, marking the same with the foreign merchant's mark and address, as furnished by the plaintiffs. The liquor dealer thereupon delivered the package to the ship at plaintiffs' request, and obtained its receipt therefor, and delivered the same to the plaintiffs, who thereupon attended to the shipment thereof, and caused bills of lading to be issued therefor in the name of the foreign customer as consignee, provided' that such customer had, at the time, sufficient funds in the plaintiffs' hands to pay the costs and charges of the same, including a commission on such purchase, hereinafter stated, or credit, the equivalent thereof with the plaintiffs. In all other cases in which plaintiffs undertook to execute the foreign order the bills of lading were taken 'to order.' The plaintiffs thereupon attached a draft by themselves upon their foreign correspondent for the amount of the consignment, charges, and said commission, and sold the draft to such bank in San Francisco as would pay the best rate for it. The amount thus realized paid for the consignment and the charges accruing thereon, including such commissions. The consignment was sometimes insured by declarations on open policies held by the foreign correspondent, and at other times by policies taken out by the plaintiffs and made payable to their order, and indorsed by them to the bank which bought the draft. On making the purchase, the plaintiffs made up an account and invoice for the foreign purchaser, charging him with the precise amount charged by the liquor dealer, including expenses of shipment and a commission of from 2½ to 5 per cent., according to the amount of the order, for their own services in executing the commission of purchase, and crediting the foreign purchaser with all discounts received. The wholesale liquor dealer from whom the purchase was made charged the plaintiffs with the amount of the purchase, and rendered his account to them,

by whom he was paid. This was done because he did not know, and would not give credit to, the foreign correspondent. The plaintiffs were not purchasers for their own use in such cases, and did not at any time claim or assert title to the purchases made under orders from the foreign correspondent. They did not carry any liquors in stock, nor would they sell liquor, or offer to obtain liquors for any person applying to them for such purpose. Except under the circumstances hereinbefore stated,—that is, upon the request of a foreign correspondent,—the plaintiffs had nothing to do with the purchase or handling of liquors."

These findings are in the nature of a special verdict, and they must control the general finding which recites that:

"In executing such orders in the manner already stated, the plaintiffs were not engaged in the business of wholesale liquor dealers, nor did they at any time sell or offer for sale foreign or domestic distilled spirits, or wines, in quantities of not less than five wine gallons at the same time."

This general and concluding finding can only be regarded as the expression of the court's interpretation of the facts previously and specially found. It does not preclude this court from considering the facts stated in the special findings, and determining whether or not, under those facts, the judgment was erroneous. It is obvious, moreover, that if there were no special findings, and if the case were now presented upon a record showing only the general finding, the court would still be required to consider the same state of facts that is contained in the special findings, for those facts are all specially pleaded in the complaint, and the defendants in error must abide by their own statement of the facts which they have declared upon in their complaint, and upon which they predicate their right to recover.

It is clear, from these facts, that the defendants in error were commission merchants, in the matter of purchasing and shipping liquors, as in other transactions. They purchased the goods in their own names, and acquired the title thereto. The vendors looked to them for payment, and could not have held the foreign correspondents therefor. So, also, in shipping the goods to the consignees, the defendants in error dealt therewith as the owners thereof. They either charged the costs and their commissions upon their books to the account of the foreign correspondents, or they drew upon them for the full amount of the purchase price, together with the costs incurred and their commission or profit in the transaction. There was no privity between the original vendor and the foreign consignee. In short, the defendants in error carried on the business of liquor dealers by going out and buying from others the goods that were needed to fill the orders that they received. They bought the goods, and sold them at a profit. One who thus buys for the purpose of filling a special order is to all intents as truly a dealer as one who carries a stock of goods for the same purpose, and it is unimportant that his profit is received in the form of a percentage upon the cost of the goods to him, or that it is called a "commission." Slack v. Tucker & Co., 23 Wall. 321; Bank v. Logan, 74 N. Y. 568; U. S. v. Kallstrom, 30 Fed. 184; U. S. v. Rose, 28 Int. Rev. Rec. 274.

In Slack v. Tucker & Co. the question arose whether commission

merchants were wholesale dealers under the internal revenue act of 1864. The court said that, though the persons there seeking to avoid the tax imposed on wholesale dealers—

"Did not keep the goods at their store, and though, as sales were made, the goods, by their direction, were put up at the mill, and directed to the purchasers, yet they were sent to and received by the plaintiffs, who delivered them if the purchasers were in Boston, or shipped them if the purchasers resided elsewhere. The goods passed through their hands before the purchasers received them. They came into their possession as soon as it was necessary to enable them to fulfill their contracts of sale. In our opinion, therefore, the plaintiffs were commission merchants, and chargeable, as such, with the tax in question as 'wholesale dealers.' The difference between a factor or commission merchant and a broker is stated by all the books to be this: A factor may buy and sell in his own name, and he has the goods in his possession; while a broker, as such, cannot, ordinarily, buy or sell in his own name, and has no possession of the goods sold. The plaintiffs made the sales themselves, in their own names, at their own store, and on commission, and had possession of the goods as soon as the sales were made, and delivered or shipped them to their customers. This course of business clearly constituted them commission merchants, as contradistinguished from mere brokers or agents."

This is substantially what was done by the defendants in error, according to the allegations of their complaint, as well as the specific findings of the court below.

The defendants in error rely upon U. S. v. Howell, 20 Fed. 718; U. S. v. Bonham, 31 Fed. 808; U. S. v. Allen, 38 Fed. 736; and U. S. v. Vinson, 8 Fed. 507. In U. S. v. Howell, the defendant was a grocer. Upon the order of one B., who wrote him a letter requesting him to purchase for B. a barrel of whisky of a certain brand and quality, for a fixed price, and to send it to him, he purchased a barrel of whisky from a wholesale liquor dealer, and had it forwarded from the liquor dealer directly to B. This he did solely as a matter of accommodation, and he made no charge for his services. He made an entry in his books against B. for the purchase price of the whisky, and the liquor dealer charged the defendant in his books in the same amount. The court said:

"The defendant was a special agent to purchase the barrel of whisky for B., under special instructions as to the price and quality. The barrel went directly from the store of C., the liquor dealer, to B., and it was not at any time or in any way the goods of defendant."

The facts in the case differ materially from those in the case at bar. The defendants in error in the case before the court were not agents purchasing goods for others, in a single transaction, purely for accommodation, and without profit. By their course of dealing, they held themselves out to be engaged in the business of purchasing, upon special orders, liquors for foreign consignees. They paid for the goods with their own funds, and received the possession thereof. They looked to their consignees for the direct payment to them of their outlays and costs and compensation.

Nor is the decision in U. S. v. Bonham applicable to the case before the court. In that case it was held that, to constitute the offense of carrying on the business of a retail liquor dealer without having paid the special tax, the accused must have procured the liquor with intent to retail it, and that it was not enough

that, having the liquor on hand for his own use, he let others have it as a matter of kindness or neighborly feeling, although he took money from them for the accommodation. In U. S. v. Allen the defendant was engaged in procuring and furnishing, to any one who would patronize him, liquors in quantities less than five gallons. He testified that he received orders, and that he required those who made the orders to pay the cost price in advance, and upon the delivery of the liquor to pay an additional price per bottle as remuneration for his services in going into a neighboring state to procure it. It did not appear that he bought specific quantities of liquor to correspond with special orders. The court, without intimating what would be its ruling had the evidence shown that the liquors were bought in specific quantities to meet special orders, held the defendant to be a dealer within the meaning of section 3242 of the Revised Statutes, and said:

"The word 'dealer' is not confined to one who sells his own property only. If one opens out a place of business for the purpose of furnishing, to all who may patronize him, liquors, malt or spirituous, in quantities less than five gallons, he is engaged in the business of a retail liquor dealer, irrespective of the question of the manner or mode in which he acquires or procures the liquors from the manufacturers. The fact that he procures, from the manufacturer or wholesaler, the liquor in quantities, and disposes of the same for profit to any one who may call upon him, certainly makes him a dealer."

In U. S. v. Vinson it was held that employers who buy tobacco and deal it out to their employés at cost, charging them with its cash cost, are subject to the special tax required to be paid, under section 3244 of the Revised Statutes, by those whose business it is to sell or offer for sale manufactured tobacco. The court said:

"In construing doubtful cases of this kind, the possible consequences to the government and to individuals ought to be borne in mind. The law being one for the raising of revenue, it ought to be construed liberally in favor of the government."

The judgment is reversed, with costs to the plaintiff in error, and the cause is remanded to the court below with instructions to enter a judgment for the defendant in the action.

MORROW, District Judge (dissenting). In the title of the Revised Statutes of the United States, relating to internal revenue, special taxes are required to be paid by persons engaged in or carrying on certain specified occupations. Section 3232 provides that:

"No persons shall be engaged in or carry on any trade or business hereinafter mentioned until he has paid a special tax therefor in the manner hereinafter provided."

The fourth subdivision of section 3244, as amended by section 18 of the act of February 8, 1875, and as further amended by section 4 of the act of March 1, 1879, provides that:

"Wholesale liquor dealers shall each pay one hundred dollars. Every person who sells or offers for sale foreign or domestic distilled spirits, wines, or malt liquors, otherwise than is hereinafter provided, in quantities of not less than five wine gallons at the same time, shall be regarded as a wholesale liquor dealer."

Section 3242, as amended by section 16 of the act of February 8, 1875, provides:

"That any person who shall carry on the business of a * * * wholesale liquor dealer, * * * without having paid the special tax as required by law, * * * shall, for every such offense, be fined," etc.

Williams, Dimond & Co. are shipping and commission merchants, doing business in San Francisco. On the 17th day of October, 1892, the commissioner of internal revenue assessed a special tax against the firm, amounting to $200, together with a penalty of 50 per cent. amounting to $100, making a total assessment of $300. The assessment was made on the ground that the firm had been carrying on the business of wholesale liquor dealers during the two years ending June 30, 1893; and the question, in the circuit court, was whether, under the provisions of the Revised Statutes, the firm of Williams, Dimond & Co. had been so engaged in and carrying on the business of wholesale liquor dealers during the period mentioned. The case was tried by the court without a jury, and the findings of fact and conclusions of law were separately stated. The court found specifically, as a fact, that the defendants in error had not been engaged in the business of wholesale liquor dealers in the following findings:

"(4) The plaintiffs were not, during any portion of the term comprised in the said assessment of tax, engaged in the wholesale liquor business, nor did they carry on such business, or sell or offer for sale foreign or domestic distilled spirits or wines in quantities of less than five wine gallons at the same time, nor did they, during any portion of said time, contemplate so doing. * * *"

"(9) In executing such orders in the manner already stated, the plaintiffs were not engaged in the business of wholesale liquor dealers, nor did they at any time sell or offer for sale foreign or domestic distilled spirits or wines in quantities of not less than five wine gallons at the same time."

The orders, referred to in the last finding, were orders to purchase wines or liquors, received by Williams, Dimond & Co. from foreign correspondents, and executed by them, as agents or brokers, through regular wholesale liquor dealers. The court further found, in the seventh finding, that:

"The plaintiffs were not purchasers for their own use in such cases, and did not at any time claim or assert title to the purchases made under orders from the foreign correspondents. They did not carry any liquor in stock, nor would they sell liquor, or offer to obtain liquors for any person applying to them for such purpose. Except under the circumstances hereinbefore stated,—that is, upon the request of a foreign correspondent,—the plaintiffs had nothing to do with the purchase or handling of liquors."

The court found, as a conclusion of law, that the tax complained of was unlawfully assessed; and that the plaintiffs were entitled to a judgment.

Where a case is tried by the court without a jury, its findings upon questions of fact are conclusive, and this court can consider only the rulings of the lower court on matters of law, properly presented in a bill of exceptions, and the further question, where the findings are special, whether the facts found are sufficient to sustain the judgment rendered. Tyng v. Grinnell, 92 U. S. 467, 469; Stanley v. Supervisors, 121 U. S. 535, 547, 7 Sup. Ct. 1234;

Smith v. Gale, 144 U. S. 509, 525, 12 Sup. Ct. 674. The findings in this case to which I have referred are clearly sufficient to support the judgment, and, in my opinion, no inferences can be drawn from the other findings of the court, relating to the purchases made by the defendants in error as agents of foreign correspondents, that will overcome or contradict the specific findings that they did not carry on the business of selling or offering for sale foreign or domestic distilled spirits, wines, or malt liquors. But, assuming that findings Nos. 4 and 9 should be properly treated as conclusions of law, rather than as findings of fact, I am still of the opinion that the defendants in error are not within the provisions of the statute. It is alleged in the complaint, and admitted in the answer, that they were, at all times mentioned, copartners, doing business as shippers and commission merchants. They had no store or place where distilled spirits, or wines, or malt liquors were kept for sale or in stock. They did not, in the language of the statute, "engage in or carry on the business" of selling or offering for sale distilled spirits, wines, or liquors. The provision and penalty were intended to apply, in my opinion, to liquor dealers who sell as a business; that is to say, to those who distinctively engage in the business of selling and offering for sale spirits, wines, or liquors, and not to a person or firm who, while engaged in another and entirely different commercial pursuit, occasionally, and as a matter of convenience to their foreign correspondents, act as their agents or brokers in the purchase from regular dealers of wines and liquors for shipment to such foreign correspondents. In 5 Am. & Eng. Enc. Law, p. 123, a "dealer" is defined as "one who makes a business of buying and selling; he is the middleman between the producer and consumer of a commodity." A single act of buying and selling is not sufficient. Overall v. Bezeau, 37 Mich. 506. The mere fact that the transaction, as between the defendants in error and the foreign correspondents for whom they bought, was, practically, a purchase, and that the profit to the defendants consisted in the commission which they charged their customers for this transaction, loses its force, so far as the applicability of the section of the statute is concerned, when it is noticed that the original vendors charged the defendants with the amount of the purchase, and were paid by them, because they did not know, and would not give credit to, the foreign correspondents. In Slack v. Tucker & Co., 23 Wall. 321, a firm of commission merchants sold by samples, and the sales were their own. The goods came into their possession as soon as it was necessary to fulfill these contracts of sale. The court, distinguishing between a factor who had possession of the goods and a broker who had not, held that the merchants in that case were wholesale dealers. Applying this distinction in the present case, the defendants in error would not be liable to the tax.