### GIRARD TRUST CO. et al. v. McKINLEY–LANNING LOAN & TRUST CO. et al.

(Circuit Court, E. D. Pennsylvania. February 15, 1905.)

Nos. 10, 13.

**1. CORPORATIONS—INSOLVENCY PROCEEDINGS—INTERVENTION.**

Where a trust company holding securities of a loan company in trust to secure its debentures petitioned the court in insolvency proceedings against the loan company asking an order permitting it to collect or sell the securities in its hands, and that its costs and expenses be made a charge against the fund realized, debenture holders, who deny its right, under the trust agreement, to so charge the costs and expenses, are entitled to intervene and contest such application.

**2. SAME—TRUSTEE HOLDING PLEDGED SECURITIES—POWERS AND DUTIES UNDER CONTRACT.**

A trust agreement under which a loan company deposited securities with the trustee to secure its debentures provided that in case of default in the payment of any debenture bond or the interest thereon the trustee should proceed to collect or sell the securities pledged, and to apply the proceeds in payment of the debentures, and that any claim of the trustee for the costs of such collection or sale should not be a lien upon the securities, but should be against the loan company only. *Held*, that such agreement did not contemplate the general insolvency of the loan company, and that while, therefore, the trustee could not be compelled in such contingency to collect the securities at its own cost, neither was it au-

thorized thereby to make such collection where a receiver had been appointed to administer the estate of the insolvent.

8. COSTS—INTERLOCUTORY ALLOWANCE.

Fees and expenses incurred on a hearing before a master of interlocutory issues arising in insolvency proceedings against a corporation cannot be allowed in advance of the general distribution of assets to be made a charge against a particular class of creditors, many of whom are not before the court, nor properly represented, on that question.

In Equity.   Hearing on master's interlocutory reports.

A. H. Wintersteen, for Girard Trust Co.

George L. Crawford, for Receiver Edmund G. Hamersly.

Charles C. Townsend and Cornwell, Gheen & Cornwell, for exceptions.

J. B. McPHERSON, District Judge.   The McKinley-Lanning Loan & Trust Company (hereinafter called the "Mortgage Company") is a Pennsylvania corporation, and was engaged in the western farm mortgage business upon the well-known plan of issuing debentures, these being secured by mortgages deposited with the Girard Trust Company as trustee.   The mortgage company fell into financial difficulties several years ago, made repeated and continued defaults in meeting its obligations, and was finally brought into this court by a creditors' bill in which Lucius B. Goodyear, a debenture holder, was the complainant.   The mortgage company's insolvency was averred, and a receiver was asked for.   No defense was made, and on April 13, 1903, Edmund G. Hamersly was appointed receiver, with the usual powers, and an injunction was issued enjoining the officers, agents, etc., of the mortgage company, the bondholders, and all other persons except the receiver, "from selling, disposing of, or in any way interfering with the property or effects of the defendant, or any part thereof, or from enforcing, or undertaking to enforce, any lien on said property or effects, or any part thereof, or from bringing, instituting, or prosecuting any act, suit, or proceeding at law or in equity against said corporation, or its assets, or against taking any steps towards the liquidation of said corporation."   Little, if any, property of the mortgage company was found in this jurisdiction, except the securities that were deposited in the hands of the trust company, and to the possession of these the trust company had a superior right.   On October 14, 1903, the trust company filed a second bill in equity against the mortgage company, joining the receiver as the other defendant, setting forth its contract with the mortgage company in behalf of the debenture holders, the default of the mortgage company, the desirability of proceeding to realize upon the securities in the hands of the trustee, and the impossibility of taking the proper steps so long as the court's injunction remained in force, and praying for an account, and for permission to sell the assets in its hands.   In December following, the two suits were consolidated by the consent of all parties, and a master was appointed to "consider the matters and things to be exhibited before him in this consolidated cause and in the causes consolidated into this consolidated cause, to report the facts and the law, and to recommend a decree

to be entered by the court in the premises." On March 1, 1904, the trust company presented a petition to the master asking to have its powers enlarged over the securities in its hands, and to this petition the mortgage company and certain debenture holders, who were not parties to the action, filed an answer, objecting to the proposed grant. The right of these holders to appear before the master was attacked, whereupon petitions were presented to the court in April and May, asking for leave to intervene, and these, with the trust company's answer thereto, were referred to the master for inquiry and report thereon. The trust company's petition for additional powers was objected to before the master on the ground that it should have been presented first to the court, whereupon the trust company withdrew the petition and did not renew it. The receiver, however, on May 5 presented his own petition to the court, asking for the same order that had been prayed for by the trust company; and this petition also, with the answers thereto, was referred to the master for appropriate action. On May 23 the trust company petitioned the court for leave to pay an allowance of $1,000 to the master on account of expenses already incurred and in part payment of his compensation, and this subject also was referred to the master for consideration and report. He has now reported fully upon all the subjects thus specially committed to him by the court, and argument has been had upon the exceptions that were filed to some of his conclusions by the debenture holders. In brief, he reports that the powers asked for by the trust company should be granted, that the petitions for intervention should be allowed, and that the trust company should be directed to pay to the master certain moneys already laid out by him for stenographer's fees and other expenses, and a further sum, to be fixed by the court, as compensation for the services that he has already rendered.

No objection was made before me to the allowance of the petitions to intervene, and I agree with the master that they should be granted. As will presently appear, the trust company's position on the subject of costs and expenses for administering the assets in its hands is antagonistic to the position of the intervening debenture holders, and under such circumstances they should be permitted to come into the suit, and defend what they believe to be their right and their interest in their own way and by their own counsel. A proper order to this effect may be prepared.

The principal subject of dispute is involved in the other two reports of the master, and needs a further statement of facts before it can be properly understood:

The agreement between the trust company and the mortgage company provides, inter alia, as follows:

"In case of default of the said McKinley-Lanning Loan & Trust Company in the payment of any debenture bond, or the interest upon the same, and such default shall continue for sixty days, then the said trustee shall proceed at once to collect or sell the securities in their hands pledged for the payment of same, and apply the proceeds for their redemption, and all costs of such collection or sale shall be charged against the McKinley-Lanning Loan & Trust Company.

"The said the Girard Life Insurance, Annuity & Trust Company of Philadelphia, as aforesaid, trustee, hereby accepts the said trust and covenants with the said the McKinley-Lanning Loan & Trust Company and with all parties who shall become in anywise interested on account of the purchase of the said debenture bonds, that they will faithfully discharge all duties herein required of them, and agrees that no claim for compensation for its services shall be a lien upon said securities pledged for the redemption of the said debentures herein provided for, but any such claim shall be against the McKinley-Lanning Loan & Trust Company only."

The construction of these paragraphs is in dispute. The intervening debenture holders insist that the trust company is bound to proceed at once to collect or sell the securities in its hands, advancing whatever sums of money may be necessary to accomplish this purpose, and looking solely to the mortgage company for reimbursement; while the trust company's position is that these provisions have no application to a case of insolvency and general default by the mortgage company, but were intended to apply only to occasional defaults during the currency of the term for which the debentures were issued. The master sustained the trust company's contention, saying:

"There is no suggestion anywhere in the trust agreement that the parties contemplated the possible insolvency of the pledgor, or that they meant to provide for such a contingency. This construction of the clause quoted is borne out by the subsequent clause where the trustee agrees to look to the McKinley-Lanning Loan & Trust Company only for compensation and reimbursement in case of such default. It is unreasonable to suppose that the trustee would agree to perform the innumerable and onerous duties attendant upon the liquidation or foreclosure of the entire trust assets without compensation or indemnity for expenses. A careful examination of the whole trust agreement leads the master to the conclusion that no such intent was in the minds of the parties when the agreement was executed. He therefore holds that the provisions in the agreement relating to the duties of the trustee upon a default, and prescribing the method by which, in such an event, the trustee shall be paid, do not contemplate the present situation nor in any manner provide for it."

I agree with this conclusion, but I am not convinced that, as a necessary result, the trust company has authority, without more, to go on and administer the assets under the direction of the court. Some one must do so, of course, but, unless the trust company is specially appointed for that purpose, I do not see where it derives the power to act in the premises. Since the agreement does not contemplate the present situation, it gives the trust company no power whatever to administer the assets in case of general insolvency; and, since the trust company has not been appointed by the court to undertake the administration, it follows, I think, as a necessary consequence, that from no source as yet has the power been obtained. I am unable, therefore, to assent to the suggested order, because it is framed upon the theory that the trust company has authority now to a limited degree, but needs to have such authority enlarged. I may suggest, however, that further disputes concerning the relative power of the trust company and the receiver over the assets may perhaps be avoided by joining the trust company with Mr. Hamersly as an additional receiver, so that it may act in administering the

assets, not only by virtue of whatever powers it may possess under the agreement, but also by virtue of the authority to be hereafter conferred by the court. A petition asking for such an appointment, and for an order giving to both receivers suitable powers to deal with the assets in the manner most likely to produce the best results, will be entertained after due notice, and, unless good reason be shown to the contrary, will be granted.

With regard to the reimbursement of the master for certain expenses and to the payment of his fee, I regret to say that I do not feel at liberty to make such an order at the present time. This is an interlocutory proceeding, from which it is probable that no appeal will lie. The trustee cannot fairly be said to represent the debenture holders in the dispute, for its interest is adverse to theirs, and only some of such holders have intervened. The rest are entitled to be heard upon a question that may, and almost certainly will, affect their interest; and a similar remark may be made concerning general creditors, if such there be, in the contingency that the securities produce more than enough to pay off the debentures in full. The proper time to determine the question of expenses and allowances is upon distribution, when all parties will be in court, with an opportunity to be heard, and under obligation to present their own claims and such objections as they may have to the claims of others. Clearly, I think, no payments should be authorized now which might be adjudged erroneous on appeal. Of course, if the trust company is willing to make advances at its own risk, on account of these expenses and the master's compensation, it is at liberty to do so.

For the reasons thus given, the orders recommended by the master upon his two reports concerning the proposed enlargement of the trustee's powers and concerning fees and expenses cannot now be made.