### WESTERN EXPRESS CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   October 20, 1905.)

#### No. 2,204.

1. WRIT OF ERROR—REVIEW—REQUEST OF BOTH PARTIES FOR PEREMPTORY INSTRUCTIONS.

Where, at the close of the evidence both parties request peremptory instructions, the giving of one is a conclusive finding in favor of such party on every disputed issue of fact, and the only questions for determination by a reviewing court are whether there was any substantial evidence to sustain such findings and whether there was error in the declaration or application of the law.

2. INTERNAL REVENUE—ACTION TO RECOVER SPECIAL TAXES—EVIDENCE.

In the assessment of special taxes the officers of the internal revenue act in a quasi judicial capacity, and in an action to recover such taxes the introduction in evidence of the assessment list, regular in form, makes a prima facie case for the government.

8. SAME—DEALERS IN MALT LIQUORS.

To render one who "sells or offers for sale" malt liquors subject to special tax as a dealer in malt liquors, under Rev. St. § 3244 [U. S. Comp. St. 1901, p. 2098], his ownership of such liquors is not essential.

4. SAME—EXPRESS COMPANIES.

The local agents of an express company in a prohibition state took orders from persons desiring beer and forwarded the same to breweries in another state. The breweries delivered the beer to the company for shipment to the agent who sent the order charging the price to the company, and having no knowledge of the local customer. On its receipt the agent stored the beer in the company's warehouse until it was called for, and then delivered it to the customer, collecting the price and the express charges, and accounting to the company for the same. He sometimes also sent orders which had not been requested, and delivered the beer to persons who thereafter applied for it. No receipts were taken from persons to whom beer was delivered, and their names did not appear on the company's books. When beer was not called for it was returned to the breweries, and the company given credit therefor. The company received nothing except the usual charges for transportation. *Held*, that the company was not merely a carrier nor a commercial broker in the transaction, but was, in effect, a commission merchant, and as such was subject to special tax under Rev. St. § 3244 [U. S. Comp. St. 1901, p. 2098], as a dealer in malt liquors at each of the agencies where such business was carried on.

In Error to the Circuit Court of the United States for the District of North Dakota.

Alfred H. Bright (Ball, Watson & Maclay, on the brief), for plaintiff in error.

B. D. Townsend, Asst. U. S. Atty., and Patrick H. Rourke, U. S. Atty.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

PHILIPS, District Judge. This is an action by the defendant in error, the United States, against the plaintiff in error, the Western Express Company, to recover special taxes assessed against the defendant as a wholesale and retail dealer in liquors. There are a large number of counts in the petition for assessments made against the express company for selling malt liquors at each of 26 stations on the line of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company in North Dakota. North Dakota is a prohibition state. On a trial to a jury, at the conclusion of the evidence, the respective counsel requested a peremptory instruction to the jury. Thereupon, on consideration, the court directed a verdict in favor of the plaintiff. By this action both parties conceded that there was in fact no case for the decision of the jury; and in legal effect submitted the whole case to the decision of the court. "When, pursuant to such requests, the court accepts these waivers, and by its peremptory instruction determines the questions of fact and of law in favor of one of the parties, both

parties are estopped from assailing or reviewing its finding upon disputed issues of fact, and are limited in the appellate court to a review of the two questions, was there any substantial evidence to sustain the court's finding of facts; and was there any error in its declaration or application of the law?" United States v. Bishop, 125 Fed. 183, 60 C. C. A. 125.

The controlling question, therefore, for decision is whether or not there was any evidence in the case to support the finding. If there was, the verdict must stand. The action being based upon assessments made by the proper revenue officers of the government, the law presumes that these officers proceeded regularly; that on due inquiry they ascertained the existence of the essential facts subjecting the defendant to such tax. In this respect such officers act in a quasi judicial capacity, and their action stands as prima facie correct until this presumption, by countervailing proof, is met and overthrown by the party assessed. The government was not required in the first instance to go further in the proofs than to submit the assessment list. 18 Int. Rev. Dec. 164 (Circuit Court, N. D., New York) ; Delaware Railway Company v. Prettyman et al., Fed. Cas. No. 3,767 (Circuit Court, D. Delaware) ; United States v. Rindskopf, 105 U. S. 418–422, 26 L. Ed. 1131. When, therefore, the government presented the assessment list, which is conceded to have been regular in form, and rested, it had made out a prima facie case. Without more, it was entitled to a verdict. It then devolved upon the defendant below to rebut the case made by a preponderance of evidence. There was not only some evidence in the case to support the verdict, but when all the evidence which supervened is examined, it discloses many cumulative facts and circumstances, which, within the range of reasonable inference, tended to support the verdict.

The essential question on trial was whether or not, within the purview of section 3244, Rev. St. [U. S. Comp. St. 1901, p. 2098], the express company was engaged in the business of a dealer in liquors, as a retail or wholesale dealer. The fifth paragraph of said section declares that:

"Every person who sells or offers for sale malt liquors in quantities of five gallons or less at one time, but who does not deal in spirituous liquors, shall be regarded as a retail dealer in malt liquors. Every person who sells or offers for sale malt liquors in larger quantities than five gallons at one time, but who does not deal in spirituous liquors, shall be regarded as a wholesale dealer in malt liquors."

Much of the unusually forceful discussion by counsel touching the relation between consignor and common carrier, when the relation of vendor and vendee begins and ends, and where, in such relation, the real title to the property remains and when it passes, is more or less academic. The actual ownership of the property is not essential to fix upon the trafficker the quality of a dealer in liquors under this statute. The statute attaches to him the office of a dealer when he "sells or offers for sale malt liquors." The clerk of the owner of a saloon selling liquor for his employer who has no license, the "bootlegger" who covertly in the brush or alleyway purveys and sells liquor

for the owner, are just as amenable to indictment, or for the revenue tax, as the owner of the liquor.

It may be conceded that the express company as a public carrier, in the usual course of business, had a right, without liability to the government for this tax, to carry beer for breweries at St. Paul and Minneapolis to their consignees within the state of North Dakota. In such a legitimate transaction the mere manner and time of delivery to the consignee, and the payment therefor would not alter the office and liability of a carrier. But the evidence discloses a most unusual and extraordinary method and relation between the consignors and the carrier. The evidence was directed more particularly to such transactions had at one of the stations in North Dakota. But the case was tried on the practical concession that a like method of procedure obtained at all the other stations. The practice was after the following fashion: Persons in North Dakota desiring to obtain beer would go to the local agent of the express company and say they wanted so much beer of a given brew, when the agent would send in the order, generally in the name of a fictitious consignee, and sometimes in the name of a mere number—say 7 or 9. The agent, in instances, would send in the order, not only to cover the quantity thus requested, but for an additional consignment. Sometimes he would send in an order without any such request from any known patron. The beer would be shipped to the agent, the price thereof charged by the shipper to the express company. The shipper knew not the local customer, and dealt not with him; but charged the sale price to and received payment from the express company. The beer, consisting of boxes and kegs, would be shipped in bulk, and when received by the agent would be stored in the company's warehouse. And while a preference would be given to those who had made to the agent a special request for a shipment, the excess would be delivered by the agent to any customer who applied to him for beer in such quantities as the buyer might desire. Thus would beer be sold by the agent to customers who had placed no previous orders with him. The agent would collect from the customer the sale price, plus the transportation charge, and in his returns to the express company would account for this money to it. The evidence further shows that the agent had with the consignor an understanding that as to any beer left over after the customers were supplied, the same could be returned to it, and the money advanced therefor would be refunded. It is a noticeable fact, in this connection, that it does not appear that the consignor made any recompense to the express company for the cost of such carriage to and fro. Another remarkable fact is that, contrary to the ordinary method of dealing between express companies and consignees of articles carried, the agent took no receipts from parties to whom the beer was delivered, and kept no books showing such names. And as further evidence of the fact that such agent in this traffic was plying the office of a dealer, like any other provident business man, he was thoughtful to be prepared to meet an expected large demand for supplies of beer from possible customers. For instance, on the 2d day of July, just two days before the Fourth of July, he

sent in orders and received an unusually large consignment from the breweries, without special requests for all of it from known purchasers.

While the evidence does not show that the express company received any commissions as such on these shipments, it does show that it received each month a very large income thereon for the carriage charges. It enjoyed a monopoly of this business. Although there does not appear to have been any occasion or exigency for "hurry-up" orders for shipment of these regular, frequent consignments, no shipments were made on ordinary freight trains, although the cost of the latter method of transportation was much less than the express charges. Certainly the express company was not performing the office in these transactions of a mere commercial broker, who is exempt under the Internal Revenue Laws from the payment of such tax. "The difference between a factor or commission merchant and a broker is stated by all the books to be this: a factor may buy and sell in his own name, and he has the goods in his possession; while a broker, as such, cannot ordinarily buy or sell in his own name, and has no possession of the goods sold." Slack v. Tucker & Company, 23 Wall. 321–330, 23 L. Ed. 143. The express agent had possession of the beer. He sold to customers who applied to him. He sold some of the beer on credit. If not paid for by the vendee, the loss would presumably fall on the express company. The company got its compensation for its pains and risk in the augmented income to its business as a carrier. In this respect the situation was little, if any, different from that of a commission merchant—an intermediary—who sells on commission, accounting to the manufacturer for the purchase money. Such a person is liable to the government for the revenue tax as a dealer under the statute. Slack v. Tucker & Company, supra; Quinn v. Dimond, 72 Fed. 993, 19 C. C. A. 336. If this express company would shield itself from liability for such tax as a dealer in liquor, which the law extends to the carrier engaged in the useful business of interstate commerce, it is only needful that it conduct the transportation of liquor from without into a prohibition state just as it should any other commodity, without making its agencies and storehouse in the prohibition state a covert for violators of the internal policy of the state.

It results that the judgment of the circuit court should be affirmed.