MAYES, Collector of Internal Revenue, v. CASEY et al.

(Circuit Court of Appeals, Sixth Circuit.　August 3, 1918.)

No. 3093.

1. INTERNAL REVENUE ⊂⇒38—ACTION TO RECOVER TAX PAID—BURDEN OF PROOF.

An additional tax assessed because of claimed withdrawal of untaxpaid whisky from warehouse, under authority of Rev. St. § 3182 (Comp. St. 1916, § 5904), is prima facie valid, and in an action for its recovery after payment plaintiff has the burden of proving its invalidity.

2. INTERNAL REVENUE ⊂⇒38—ACTION TO RECOVER TAX PAID—INSTRUCTIONS.

In an action to recover an additional internal revenue tax assessed and collected because of the claimed withdrawal of whisky untaxpaid, instructions virtually placing the burden on defendant to show that any, and if so how much, of the whisky withdrawn, was not taxpaid, *held* erroneous.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by Albert B. Casey, administrator, and another, against T. Scott Mayes, Collector of Internal Revenue. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Perry B. Miller, U. S. Atty., of Louisville, Ky., and William C. Fitt, Asst. U. S. Atty., of Washington, D. C., for plaintiff in error.

Wm. Marshall Bullitt, of Louisville, Ky., and Alfred S. Austrain, of Chicago, Ill., for defendants in error.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. This writ of error aims to reverse a judgment for $40,205.84 recovered in an action based upon payment under protest of an assessment, made in form pursuant to law by the Commissioner of Internal Revenue, for taxes upon spirits removed from plaintiffs' bonded warehouse between January 1, 1910, and November 30, 1914, untaxpaid.

When whisky is entered into a bonded warehouse, it is gauged by the government gauger; when it is withdrawn, it is similarly regauged. By evaporation and soakage, some of the contents gradually disappear; taxes are paid upon the actual contents at the time of withdrawal, subject to this exception; that if the loss exceeds certain allowances called the "Carlisle Allowances," fixed by statute and gradually increasing at two or three months' intervals during a period of seven years (although the goods may remain in bond not exceeding eight years), payment must be made as well on such excess outage. Act Jan. 13, 1903, c. 134, 32 Stat. 770 (Comp. St. 1916, § 6054).

The amended petition alleged in detail the operations during the period specified; withdrawal of 50,868 barrels containing originally nearly 2,500,000 gallons, payment of tax in accordance with the governmental regauges at withdrawal on 2,014,295.4 gallons, actual contents, and 13,405.9, excessive outage; the difference nearly 400,-000 gallons, representing the Carlisle Allowance. It further alleged that the additional tax was assessed on account of 33,843.3 gallons, claimed to have been removed untaxpaid after entry in bond; that no stamptax spirits were removed untaxpaid during such period; that the taxes and interest were unjustly and illegally assessed.

The answer denied that no stamptax spirits were removed untaxpaid during such period; that all taxes imposed by law were paid before removal of the goods; that the assessment was unjust or illegal; it specifically denied each of the detailed allegations of the petition and by amendment alleged affirmatively that on each spirit withdrawal day, during the period, plaintiff removed from the warehouse untaxpaid spirits, aggregating 33,843.3 gallons, with intent to evade the payment of the tax; that this was part of the spirits contained in the 50,868 barrels when entered into bond; and that the removal was effected by equalizing the barrels, that is, "by underweighing and underproofing the contents as they were removed from bond and by transferring a portion of the contents of the barrels containing respectively more than the requirements of the Carlisle

Allowance to barrels containing respectively less than the minimum contents required by the Carlisle Allowance."

[1] 1. To recover, plaintiffs must sustain the allegation that the assessment was without warrant of law. To do this, they must prove that all legal taxes have been paid, even though it involve proof of the negative allegation that no spirits had been removed untaxpaid.

This burden rested upon them throughout the trial, whatever shifting there may have been in the duty of going forward with proof to meet a prima facie case.

The burden is not met by proof that payment was made in accordance with the governmental regauge; for, whatever presumption of regularity might otherwise attach to such regauges as official acts, none can be given them in the light of the later assessment concededly based upon the alleged inaccuracy of the regauge returns, an assessment which is expressly declared by statute to be prima facie evidence of the amount due. Revised Statutes, §§ 3182, 3309, 3437 (Comp. St. 1916, §§ 5904, 6089); Western Express Co. v. United States, 141 Fed. 28, 72 C. C. A. 516. Nor does the added fact of long delay in making the assessment overcome its prima facie evidentiary effect. In other words, an assessment made contrary to the regauge returns must stand as valid, until some other evidence of its incorrectness or of the correctness of the regauge returns is introduced.

The error in not directing a verdict for defendant at the close of plaintiff's case was, however, waived. Defendant offered affirmative evidence supposedly in support of the validity of the assessment. Thereafter, it was proper to submit the entire case to the jury on the single issue made by defendant's general denial.

[2] The trial judge considered and dealt with the affirmative allegations of the answer as if they were distinct affirmative defenses, rather than specifications in explanation and support of the general denial. This resulted, not only in the erroneous instruction that the burden of proving these defenses rested upon defendant and in the holding that the defenses must be disregarded as not proven, but necessarily in a confusion both as to the exact question to be determined by the jury and the burden of proof thereon.

Instead of advising the jury that any evidence bearing upon equalizing should be considered by the jury, the court, while reluctantly permitting the jury to weigh the comparison evidence hereinafter referred to, expressly stated that the only issue before them involved the question whether, apart from equalizing, untaxpaid spirits had been removed.

The entire controversy, however, turned upon the question of equalization. The evidence offered by defendant was directed towards showing that equalization had been practiced in one or the other of the ways specified in the amendment to the answer. This eivdence consisted in the testimony of gaugers. When suspicion was awakened by the belated discovery that the regauge returns showed that of the 50,868 barrels, 9,892 were exactly on the line of the Carlisle Allowance, 48 per cent. were within .1 of a gallon and 61 per cent. within .2 of a gallon of the line, a regauge was directed to be

made for the purpose of comparison. This was done in January, 1915. At that time, there were on hand whiskies of 1909, 1910, and 1911. While the evidence shows that a few hundred of earlier years were on hand November 30, 1914, it does not affirmatively appear that any of them remained in January, 1915. Seven lots of 100 barrels each were taken at random for regauge and comparison with similar lots of the same age and length of storage included in the 50,868 barrels. The result was that while, of the latter, 18 per cent. had been reported as exactly on the line, 47 per cent. as within .1, 68 per cent. as within .2, and 77 per cent. as within .3 of a gallon of the line, of the former only 4 per cent. were on the line, 9 per cent. within .1, 13 per cent. within .2, and 18 per cent. within .3 of a gallon of the line.

The 700 barrels were, in our judgment, a fair sample of the 20,000 barrels which remained on hand November 30, 1914, and the evidence was properly admitted. But in the instructions, its scope was improperly and unduly limited by the direction to disregard the matter of equalization. This proof tended to show equalization by underweighing, if not by actual transfer, especially when coupled with the positive testimony that some of the regauge returns had been made on the basis of weights found by the regauger already marked on the barrels, the avowals based upon the improperly excluded testimony of a witness that while he could not tell exactly what proportion of the regauges were so made, in at least one-third he had accepted such weights, and upon the improperly excluded testimony of expert gaugers of long experience and some knowledge of the actual conditions, as to what the percentage of excessive outage would ordinarily be in such cases.

That a better comparison with the 50,868 barrels could not be made, because there were no longer on hand any whiskies of the earlier ages, did not make this evidence improper for comparison, not merely with the 1909, 1910, and 1911 withdrawals but with all the withdrawals.

Whether or not under all the circumstances, including the physical condition of the warehouses, with the many possibilities it afforded for tampering with the goods notwithstanding the presence somewhere in the many buildings of an aged custodian, the assessment made on the basis of this comparison was to be overturned, was a proper matter for the jury to determine under clear instructions as to the issue and the burden of proof. They could have upset it in whole or in part; it was for them to determine whether and to what extent, in the light of all the evidence, the average surplus above the Carlisle Allowance of .868 gallons per barrel found in the 700 barrels was improperly used as a basis to increase to the same amount the average surplus of .199 shown by the withdrawal regauge reports for the 50,868 barrels. But to permit even a partial recovery, the burden was on the plaintiffs to show what, if any, part of the assessment was wrongful. It was error therefore to charge that if from a preponderance of the evidence, the jury found any part of the 50,868 barrels removed not taxpaid, they should find the number of untaxpaid gallons removed, deduct the amount at

the rate of $1.10 per gallon from plaintiff's claim, and give plaintiff a verdict for the difference. This amounts to a direct charge that plaintiffs had sustained their case except as to so much as defendant might disprove by a preponderance of the evidence.

It may be added that other pertinent evidence was before the jury; 11,473 barrels of 1909, 1910, and 1911 whisky showed on withdrawal regauge in 1915, immediately after the investigation had been made, only 6 per cent. on the line. 13 per cent. within .1, and 19 per cent. within .2 of a gallon of the line.

For the errors indicated, the judgment must be reversed, and the cause remanded for retrial.

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes