LAWRENCE LAUDISI, Respondent, *v.* AMERICAN EXCHANGE NATIONAL BANK, Appellant.

Bills, notes and checks — banking — contract — letter of credit issued to secure payment for merchandise — direction to bank to pay drafts of vendor on presentation of bill of lading and copy of invoice — presentation with draft of bill of lading which did not fully describe merchandise as complying with contract together with invoice made out by vendor which did — when bank justified in paying draft — rights of parties not changed by notification to bank before payment that merchandise did not comply with contract.

1. A bank permitted to pay drafts on " invoice and negotiable bill of lading showing destination " to a certain point is justified in acting on a bill of lading which, so far as its description goes, shows the shipment of required goods and is then supplemented by a proper invoice which completes the description and shows that the goods are the ones mentioned in the letter of credit.

2. Plaintiff made a contract with a corporation which was doing business in New York city, for the purchase of a quantity of grapes of a specified kind or quality which were to be shipped from California. As a method of paying for the grapes he contracted with the defendant for the issue to the vendor of a letter of credit under which the latter's drafts for the purchase price of the grapes were to be paid by defendant on presentation if accompanied by certain documents. Grapes were shipped to plaintiff from California in purported execution of this contract and a draft for the purchase price thereof paid by defendant on account of plaintiff and on presentation therewith of certain documents. The plaintiff now claims that the grapes so shipped were much inferior to those which he had contracted to buy and that the documents presented by the vendor did not so comply with the letter of credit issued in pursuance of his contract with defendant as to entitle it to pay said draft. The contract was in the form of a letter addressed by plaintiff to defendant and, referring to drafts of the vendor to be paid on account of the purchase price of the grapes, it provided: " It is understood and agreed that you may accept and/or pay the draft and/or drafts under said letter of credit on presentation of one copy of bill of lading  *  *  *  together with copy of invoice and/or other documents as required by said letter of credit." It also contained the following clause: " Invoice and

negotiable railroad bill of lading showing destination to ° * * * to accompany drafts." When the vendor presented the contemplated draft it presented therewith a bill of lading duly issued at the shipping point in California but which described the article shipped simply as " grapes " and an invoice made out by the vendor in New York instead of by the shipper at the shipping point, which fully described the grapes as complying with the contract between plaintiff and his vendor. The plaintiff's contention is that the bill of lading by itself should have shown a shipment of the particular kind of grapes called for by his contract and specified in the letter of credit and that the defect in the description contained in it cannot be remedied by the invoice made out by the vendor in New York city. This view is not sustained by the authorities. There is nothing in the description of the documents which were to accompany the drafts when presented for payment which places upon the bill of lading the requirement of so describing all of the characteristics of the article shipped that it alone will show that such article is the one described in the letter of credit. Neither is the invoice to be dismissed for the purpose claimed by defendant because it was made out by the vendor and was, as stated, a self-serving statement.

3. Before the defendant paid the draft, it was notified by the plaintiff that the grapes did not comply with the requirements of the contract but were much inferior thereto and it was notified or requested not to pay the draft. This did not change the relations or the rights of the parties. The bank was not obliged to assume the burdens of a controversy between the vendor and vendee and incur the responsibility of establishing as an excuse for not paying the draft that the vendee's version is the correct one.

*Laudisi* v. *American Exchange Nat. Bank,* 209 App. Div. 906, reversed.

(Argued October 16, 1924; decided December 19, 1924.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 30, 1924, affirming a judgment in favor of plaintiff entered upon an order of Special Term granting a motion to strike out the answer and for summary judgment and denying a motion, by defendant, for a dismissal of the complaint.

*Edgar J. Nathan* and *Michael H. Cardozo, Jr.,* for appellant. The letter of credit constitutes the sole

contract between the bank and the seller. The bank had no concern with any controversy between buyer and seller. (*Lamborn* v. *Lake Shore Bank & T. Co.*, 231 N. Y. 616; 196 App. Div. 504; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; 20 J. & S. 334; *American Steel Co.* v. *Irving Nat. Bank*, 266 Fed. Rep. 41, 43; *International Banking Corp.* v. *Irving Nat. Bank*, 274 Fed. Rep. 122; 283 Fed. Rep. 103; *National City Bank* v. *Seattle Nat. Bank*, 121 Wash. 476.). The documents presented to appellant conformed to its letter of credit, and the draft was properly paid. (*Urquhart* v. *Eastern Bank*, L. J. [91 K. B.] 274; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *Borden Nat. Bank* v. *American Nat. Bank*, 282 Fed. Rep. 73.) The notice from plaintiff that the grapes were not in accordance with contract was immaterial, and legally ineffective. (*Frey & Son* v. *Sherburne Co.*, 193 App. Div. 849.) Even though the invoice be deemed a self-serving document, it was the precise document the bank was authorized to accept. (*Springs* v. *Hanover Nat. Bank*, 209 N. Y. 224; *Wood* v. *Tiedemann*, 1 Hurl. & C. 478.) The letter of credit was irrevocable. The obligation of the bank is not similar to liability under a guaranty. (*Second Nat. Bank* v. *Columbia Trust Co.*, 288 Fed. Rep. 17; *Portuguese American Bank* v. *Atlantic Nat. Bank*, 200 App. Div. 575; *Bank of Italy* v. *Merchants Nat. Bank*, 236 N. Y. 106.)

*Ralph Stout* and *Adolph Ruger* for respondent. It was the duty of defendant bank not to pay any draft except in accordance with the terms of the letter of credit. (*Murdock* v. *Mills*, 11 Metc. 513; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *Lamborn* v. *L. S. Banking & Trust Co.*, 196 App. Div. 504; *Internat. Banking Corp.* v. *Irving Nat. Bank*, 274 Fed. Rep. 122; 283 Fed. Rep. 103; *Old Colony Trust Co.* v. *Lawyers Title & Trust Co.*, 297 Fed. Rep. 152; *Portuguese Am. Bank* v. *Atlantic Nat. Bank*, 200 App. Div. 575; *Brown, Graves & Co.* v. *Ambler*,

66 Md. 391; *Moss* v. *Old Colony Trust Co.*, 246 Mass. 139; *Scott & Co., Ltd.*, v. *Barclays Bank, Ltd.*, [1923] 2 K. B. 1.) That the invoice alleged to have accompanied the draft and bill of lading contained the same description as the letter of credit does not relieve defendant of liability. (*Portuguese American Bank* v. *Atlantic Nat. Bank*, 200 App. Div. 575; *Poland* v. *Hollander*, 62 Misc. Rep. 523; *Lindley* v. *First Nat. Bank*, 76 Iowa, 629; *Strong* v. *State*, 181 N. Y. Supp. 185.) Defendant having paid in violation of the letter of credit, is liable to plaintiff. (*Frey & Son* v. *Sherburne Co.*, 193 App. Div. 849; *Toel* v. *Hellman*, 13 J. & S. 336; 83 N. Y. 601.)

HISCOCK, Ch. J. The plaintiff, who lived on Long Island, made a contract with Grande Di Paola, Incorporated, which was doing business in New York city, for the purchase of a quantity of Alicante Bouchez grapes which were to be shipped from California. As a method of paying for said grapes he made a contract with the defendant for the issue to said vendor of a letter of credit under which the latter's drafts for the purchase price of the grapes were to be paid by defendant on presentation when accompanied by certain documents. Grapes were shipped to plaintiff from California in purported execution of this contract and a draft for the purchase price thereof was paid by defendant on account of plaintiff and on presentation therewith of certain documents. The latter now claims that the grapes so shipped were much inferior to those which he had contracted to buy and that the documents presented by the vendor did not so comply with the letter of credit issued in pursuance of his contract with defendant as to entitle it to pay said draft.

Most of the details of the contract between plaintiff and defendant and of the letter of credit are not material or involved in this controversy. In fact the only provision which requires our consideration and interpretation

is the one describing the documents to be presented with the draft as an authority for paying the latter on account of plaintiff.

The contract was in the form of a letter addressed by plaintiff to defendant and, referring to drafts of the vendor to be paid on account of the purchase price of the grapes, it provided: " It is understood and agreed that you may accept and /or pay the draft and /or drafts under said letter of credit on presentation of one copy of bill of lading * * * together with copy of invoice and /or other documents as required by said letter of credit." The letter of credit issued in pursuance of said contract to the vendor provided for drawing of drafts against shipments to be made at a certain time of Alicante Bouchez grapes at a certain price from California to Long Island City. It then contained the following clause whose interpretation and application immediately encompass the dispute between these parties: " Invoice and negotiable railroad bill of lading showing destination to Eighth Street yard Long Island Railroad, Long Island City, to accompany drafts."

When the vendor presented the contemplated draft it presented therewith a bill of lading duly issued at the shipping point in California but which described the article shipped not as Alicante Bouchez grapes but simply as " grapes " and an invoice made out by the vendor in New York instead of by the shipper at the shipping point which fully described the grapes as complying with the contract between plaintiff and his vendor. Thus the two instruments together showed a shipment of the articles which plaintiff's contract of sale called for and which fully warranted the payment of the draft, but the plaintiff says that this is not sufficient. He argues that the bill of lading by itself should have shown a shipment of the particular kind of grapes called for by his contract and specified in the letter of credit and that the defect in the description contained in it cannot be remedied by the

invoice made out by the vendor in New York city. He cites no case which, in our opinion, sustains the contention nor are we aware of any such one, and the allegations of the affidavits presented on the application for judgment do not sustain such contention.

The relation which arises between a customer and a bank in respect of a letter of credit issued by the latter for the account of the former is a familiar one and in its general aspects well understood. As a convenient method of paying for goods which he may purchase, the customer authorizes the bank to issue a letter of credit providing for the payment of drafts drawn by the vendor on such conditions as he may elect. He may authorize the bank to pay drafts without any accompanying documents; he may authorize payment on a bill of lading and invoice, as in this case; he may prescribe much more stringent limitations upon the power of the bank. But in any case the bank has the power and is subject to the limitations which are given and imposed by this authority. If it keeps within the powers conferred it is protected in the payment of the draft. If it transgresses those limitations it pays at its peril. A customer having the right to prescribe and phrase limitations as he desires, it is our duty to give to language its ordinary and sensible meaning which will neither destroy the protection which the customer has exacted nor on the other hand impose upon the bank some obligation not fairly warranted by the language which has been adopted by the parties.

Following these principles we find nothing in the description of the documents which were to accompany the drafts when presented for payment which, in our judgment, places upon the bill of lading the requirement of so describing all of the characteristics of the article shipped that it alone will show that such article is the one described in the letter of credit. The paramount purpose of a bill of lading is to show the shipment of goods which, so far as appears, conform to necessary

requirements as stated in the letter of credit. If it affirmatively shows the shipment of goods which do not comply with the requirements of a letter of credit a bank would not be justified in acting upon it. If it describes the goods shipped by a nomenclature different than that employed in the letter of credit a bank would be justified in refusing to make payments on the strength of it and thereby incurring the possible burden of establishing in litigation that the different terms meant the same thing. Such, in the case of a guaranty, was our decision in *Bank of Italy v. Merchants National Bank* (236 N. Y. 106). If a customer in his contract with the bank and by the letter of credit requires that the bill of lading shall by itself and on its face show that certain described goods have been shipped a bank will not be protected which pays on the faith of a bill which does not comply with this requirement. Such in its fundamental features and in its theory was the decision of this court in *Bank of Montreal v. Recknagel* (109 N. Y. 482) especially relied on by the plaintiff.

But when we pass these particular cases and others which perhaps might be cited we think that a bank permitted to pay drafts on " invoice and negotiable bill of lading showing destination " to a certain point is justified in acting on a bill of lading which, so far as its description goes, shows the shipment of required goods and is then supplemented by a proper invoice which completes the description and shows that the goods are the ones mentioned in the letter of credit. Such seems to us to be the natural and compelling interpretation of the clause which was used in this case. Even if we could be justified in straining the natural meaning of words in such a letter of credit so as to meet some call of policy or to secure some element of greater and proper safety to the one on whose account the draft is being paid, we do not see how we could find those conditions existent here. A bill of lading in this case, even if it

specified the shipment of the particular kind of grapes ordered by the plaintiff would be no guaranty of the fact of such shipment. Of course nobody would expect a railroad company to open and examine the contents of 1,240 boxes of grapes and see that they all complied with the description in the letter of credit. In such a case it inevitably would take from the shipper the description of the goods which were being transported as indicated by the marks on the packages or by other statements and would then protect itself from inaccuracy or mistake by the clause ordinarily found in bills of lading and included in this particular one, " contents and condition of contents of packages unknown," and which, we have held, does protect a railroad company from inaccuracy in its description of goods being transported. (*Dworkwitz* v. *N. Y. C. R. R. Co.*, 230 N. Y. 188.)

Then, passing to the contention made by defendant that the indeterminate description employed by the bill of lading in this particular case was so supplemented by the description of the invoice that the defendant was authorized to find a conformity of the shipment with the letter of credit, the plaintiff urges that the invoice was made in New York instead of California, that its correctness was not authenticated or certified by any outside party and that it was, therefore, merely a self-serving declaration of the vendor which furnished no authority for payment by the defendant. Again we find nothing which justifies these criticisms of the plaintiff or prevents the invoice from being regarded as a proper and sufficient supplement to the bill of lading. We certainly should not feel authorized in the absence of sufficient provision to that effect, or of facts not appearing on this motion, to hold that an invoice may not be made out by the vendor at the place where he is doing business rather than at the point from which he procures the goods to be shipped. Nobody can foresee the results to which

16

any such requirement as that would lead. Neither is the invoice to be dismissed for the purpose claimed by defendant because it was made out by the vendor and was, as stated, a self-serving statement. Invoices ordinarily are made out by the vendor and contain its version of the transaction under review. A vendee apprehensive of the results which may flow from such action can very easily guard against them by requiring an invoice certified by some designated person or authority. This plaintiff might have made various provisions in his contract with the defendant to the end of securing a true, fair and accurate invoice which should accompany the bill of lading and which would protect him from the misfortune which he now says has befallen him of having the purchase price paid for goods which were much inferior to those which he had ordered. The trouble is that he did not do it and the courts have no right to interpolate in his contract provisions, guaranties and safeguards which he himself did not deem it necessary to put there.

The whole process of authorizing banks to issue letters of credit under which the purchase price of goods is often paid for account of the vendee before he has had a chance to examine them is largely based on confidence in the honesty of the vendor. If the vendee is suspicious of dishonesty he can guard against it by appropriate clauses in his contract. But certainly the courts ought to exercise no power of embarrassing or confusing widespread processes of commercial life by inserting in such contracts as this one clauses which it may deem in a particular case might have been quite properly placed there but which as a matter of fact the parties were content to disregard and omit. The customer can impose and it will be the duty of the courts fairly to enforce all the restrictions and safeguards he desires. But they should not by strained interpretation impose those which he has omitted.

There remains one feature to be briefly considered.

Before the defendant paid the draft it was notified by the plaintiff that the grapes did not comply with the requirements of the contract but were much inferior thereto and it was notified or requested not to pay the draft. We do not think that it is very earnestly urged by the plaintiff that this fact changed the relations and rights of the parties. It did not. The contract between the customer and the bank under which the latter issues an irrevocable letter of credit is entirely distinct and apart from the contract between such customer and, as in this case, his vendor under which goods are to be shipped. The question between the customer and the vendor is the one whether the goods comply with the contract and if they do not the former has his appropriate right of action. The question between the customer and the bank which issues the letter of credit is whether the documents presented with the draft fulfill the specific requirements and, if they do, speaking of such facts as exist in this case, the bank has the right to pay the draft no matter what may be the defects in the goods which have been shipped. The bank is not obliged to assume the burdens of a controversy between the vendor and vendee and incur the responsibility of establishing as an excuse for not paying a draft that the vendee's version is the correct one.

These views lead to the conclusion that the judgments which have been rendered must be reversed, with costs in all courts and plaintiff's motion to strike out defendant's answer and to grant summary judgment must be denied, with ten dollars costs, and defendant's motion for judgment dismissing plaintiff's complaint must be granted, with ten dollars costs. We think, however, that inasmuch as defendant's motion to dismiss the complaint has the effect of a demurrer, plaintiff should have leave to plead over if he so elects.

POUND, MCLAUGHLIN and ANDREWS, JJ., concur with HISCOCK, Ch. J.

Cardozo, J., concurs in the result upon the ground that in the absence of banking or commercial usage to the contrary, the defendant was at liberty, under the letter of credit in controversy, to act upon the bill of lading as supplemented by the invoice, and that if usage to the contrary existed, it should have been stated in the complaint.

Lehman, J., in opinion, following, concurs in so much of opinion as holds that judgment entered on plaintiff's motion for summary judgment be reversed and dissents from so much of said opinion as holds that defendant's motion for judgment dismissing complaint should be granted. Crane, J., dissents.

Lehman, J. The affidavits in the present case show no dispute as to the circumstances under which the defendant paid the draft. If there is any issue between the parties it is only as to whether payment made under these circumstances is payment in accordance with the terms of the letter of credit. Whether or not it was in accordance with the terms of the letter of credit depends solely upon the proper interpretation of these terms. The letter of credit authorized Grande-Di Paola, Inc., to draw upon the defendant " against shipment * * * of one fifteen ton car of Alicante Bouchez grapes, * * * invoice and negotiable railroad bill of lading showing destination to Eighth Street Yard, Long Island Railroad, Long Island City, to accompany drafts." A draft was presented, accompanied by a bill of lading and an invoice. The bill of lading was for " grapes " shipped from California, but without any description of the grapes. The invoice was made in New York by the seller, who was not the shipper. The question which the court must decide before it grants judgment is whether the bill of lading and invoice actually presented is in accordance with the intent of the parties as expressed in the letter of credit. The courts below have decided this

question against the defendant, even though the defend-
ant has made affidavit that " generic terms are generally
used to describe merchandise in bills of lading, and when
making payments under letters of .credit it is customary
for banks to rely upon the description of the merchandise
contained in the invoice accompanying the other docu-
ments." I agree with the decision of this court that the
interpretation placed upon the terms of the letter of
credit by the courts below is not justified, but I reach
that conclusion only because of this allegation in the
defendant's affidavit. I, therefore, concur in the decision
of the court in so far as it reverses the judgment in favor
of the plaintiff, but I dissent from the dismissal of
plaintiff's complaint. .

The letter of credit contains no description of the bill
of lading and invoice which in terms precludes the bank
from urging that the bill of lading and invoice presented
were in accordance with the intent of the parties. To
determine that intent we must endeavor to place
ourselves in the same position as the parties and apply
the same knowledge of surrounding circumstances as we
may presume the parties to have. I can see no reason to
doubt that the parties contemplated that the invoice
would be made out by the seller rather than the shipper,
and that it might be made out at the place of business
of the seller even though that place of business was in
New York and not in California, the State from which
the grapes were to be shipped. It purports to cover
grapes of the kind named in the letter of credit. Both
logic and authority seem to show that no other invoice
was required by the letter of credit and certainly in the
absence of evidence which would justify us in believing
that the parties contemplated some other invoice we
should so hold. On the other hand, the bill of lading
contains only a generic description of the goods shipped
as " grapes," and under the terms of the letter of credit
drafts could be drawn only against shipment of "Alicante

Bouchez " grapes, and, of course, the parties intended that the documents which were to accompany the draft should cover " Alicante Bouchez " grapes. It is said that in fact such grapes were not shipped. That fact is irrelevant if the bank paid against the documents against which the parties provided that payment should be made, but though the bank was not called upon to determine whether the goods were in fact shipped, it was called upon to determine whether the documents tendered were in accordance with the intent of the parties as set forth in the letter of credit. The question then narrows itself down to the point of whether a bill of lading purporting to show a shipment of " grapes " is such a bill of lading as the parties contemplated when they provided for drafts against shipment of "Alicante Bouchez " grapes. In the absence of special circumstances showing such intent, I do not think that such an interpretation of the contract would be reasonable. The opinion of the court seems to me to indicate that such construction may be based upon the fact that bills of lading usually contain a clause " contents and condition of contents of packages unknown; " that under a letter of credit reliance is placed upon the good faith of the seller of goods who draws the drafts and especially upon the fact that the contract embodied in the letter of credit provided for both a bill of lading and an invoice so that both might be read together and the statement contained in one might supplement the statement contained in the other. While all these circumstances must be given weight, I do not regard any, or all of them together, as sufficient to lead to a conclusion that the documents presented were sufficient without further proof that the bill of lading presented was in the usual form. We hold that the invoice made by the seller in New York is sufficient, but a seller in New York cannot be presumed to have knowledge of the shipment made by another from California. He might in entire good faith make an invoice describing the grapes as Alicante Bouchez grapes

upon the mistaken and perhaps unfounded belief that such grapes had been shipped and were covered by the bill of lading. The shipper may not even have been under any obligation to ship Alicante Bouchez grapes and may never have intended to ship such grapes, and the invoice is not a representation that such grapes have been shipped by one knowing the facts; it is at most a representation by the seller that he intends to transfer title to such grapes. It rested with the parties to determine whether they should provide that such a representation was sufficient. The general trend of the decisions in regard to commercial letters of credit has been to provide protection for the banker and its customers by giving a rather strict interpretation to their contracts. In all cases that I have been able to find the courts have interpreted such contracts as not implying an obligation to pay unless the documents clearly on their face are a compliance with the contract and carry out its intent so that at least in the absence of bad faith they evidence a transfer of title to the goods described in the letter of credit. The invoice in this case carries out what I may presume was the purpose of requiring an invoice, viz., it evidences a transfer, or willingness to transfer, from seller to buyer of the grapes described therein for the price named. The bill of lading only partially fulfills the purpose for which it was required. It is a shipping document and document of title, but it does not completely show the nature of the goods shipped and transferred. We may assume that the parties intended that these documents should be read together if the usual bill of lading contains only similar generic terms which describe only incompletely the goods shipped. We may not insert in the letter of credit an implied term that an unusual bill of lading was required even though we may think that prudence should have dictated such a term. The parties have chosen to use the term "bill of lading" without further description and that means under the

circumstances of this case a bill of lading such as is usually employed. Since the affidavits of the defendant show that the bill of lading presented was the bill of lading generally employed, the judgment against it is erroneous.

We may not take judicial notice of the existence of banking customs one way or the other, nor may we take judicial notice of the usual contents of a bill of lading except perhaps as to the general form of the uniform bill. We do know, however, that bills of lading are intended to show the shipment of goods; we know that the terms of the letter of credit were intended to preclude payment unless the bank received documents purporting to transfer title to described goods, and when a bill of lading fails to show the kind of goods shipped, we may not hold such bill of lading sufficient without some evidence that the parties intended no other bill of lading. The rule now apparently laid down that even without such evidence all the required documents may be read together, and though made by different parties in different places, presents sufficient evidence to satisfy the terms of the letter of credit that the draft is drawn against the shipment of Alicante Bouchez grapes, is I think not in accordance with the definiteness and certainty required in such commercial transactions. It should be employed only in a case where the intent of the parties is reasonably clear, confined to specific cases and not made a general rule.

Judgments reversed, etc.