CONTINENTAL NAT. BANK et al. v. NATIONAL CITY BANK OF NEW YORK.*

No. 7028.

Circuit Court of Appeals, Ninth Circuit.
Feb. 23, 1934.

*Rehearing denied April 13, 1934.

Le Roy M. Edwards, Oscar C. Sattinger, and A. S. Goldflam, all of Los Angeles, Cal., for appellants.

Gibson, Dunn & Crutcher and H. F. Prince, all of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

This is an appeal from a judgment for plaintiff, National City Bank of New York, in an action for damages suffered because of alleged wrongful refusal of defendant, Continental National Bank, to honor drafts drawn under its letter of credit and purchased by plaintiff. The Continental will for convenience be referred to as if it were sole defendant and appellant.

On April 12, 1929, the case was submitted to the District Court on a stipulation of facts, without any requests being made by

either party for findings of fact, general or special, or for a declaration of law in its favor either generally or specially because of the insufficiency of the evidence to permit of a judgment for the opponent. On August 10, 1932, an entry was made in the minutes of the trial judge and also on the record, which, after reciting the delay in the consideration of the case as due to the desires and hopes of the parties for a settlement, sustaining plaintiff's objections to the materiality of a part of the stipulated facts and noting an exception to the ruling, proceeds: "And it is further ordered that judgment be for plaintiff in the first and second causes of action alleged in the first amended complaint for the sum of Twenty Four Thousand Dollars ($24,000.00) with interest at the rate of seven per cent (7%) per annum from May 5th, 1924, with costs of suit."

On August 31, 1932, the court granted defendant's motion for leave to request a declaration of law that, on the admitted stipulated facts, plaintiff, because of its failure to comply with the terms of the letter of credit, was not entitled to recover, but refused to make this declaration. Thereupon, on the same day, defendant requested special findings of fact and conclusions of law, but these likewise the court, on September 5, 1932, refused to make. On that day the court made and signed and on the following day filed both its own findings of fact and conclusions of law in favor of plaintiff and the judgment now before us on appeal. Exceptions were taken and allowed to each of the rulings, on August 31st and on September 5th, which were adverse to defendant.

In a case such as this, tried by the court without intervention of a jury, the review of the appellate court is limited by Rev. St. § 700, 28 U. S. C. § 875 (28 USCA § 875), to "the rulings of the court in the progress

of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions," except that, "when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

The ruling excluding a part of the stipulated facts as immaterial, is duly presented for review. We therefore summarize first the other stipulated facts, all of which are also in the court's findings.

On April 5, 1924, defendant wired plaintiff in New York City the contents of the letter of credit;[1] pursuant to defendant's request, plaintiff advised its Brussels branch, which thereupon purchased from the drawer its 60 days after sight draft for $24,000 drawn on defendant under its letter of credit, and accompanied by the following documents: commercial invoice, consular invoice, ocean bill of lading, marine insurance policy, copy of charter party, and also a document entitled "A certificate of quality." The draft with these documents attached, sent by plaintiff direct to defendant for acceptance, was received by the latter in Los Angeles on the 5th day of May.

The cement covered by these documents, together with other cement purchased by I. A. Stub & Co. under other letters of credit, arrived in Los Angeles harbor before receipt of the draft and documents by defendant.

Between the 7th and 15th of May, telegraphic communications passed between defendant and plaintiff which were generally to the effect that defendant would not honor the draft because the character of the cement did not comply with the specifications in the letter of credit.

On the 29th of May, the draft was formally presented for acceptance and protested for nonacceptance.

---

[1] "Continental National Bank

"Los Angeles, Cal.
"Credit No. 151 $24,000.00
"April 5th, 1924.
"Confirmed Banker's Credit
"Irrevocable.

"Messrs. I. Chaney Fatton, 61 Rue di Midi, Brussels, Belgium

"Gentlemen: We hereby authorize you to draw on us at sixty (60) days sight, for the account of Messrs. I. A. Stub & Co., San Pedro, California, for any sum or sums not exceeding a total of Twenty Four Thousand Dollars ($24,000.00), accompanied by Commercial Invoice, Consular Invoice, Copy of Charter Party, Ocean Bills of Lading, Marine Insurance Certificates, representing cost, insurance, and freight, against shipment of Twelve Thousand (12,000) Barrels Portland Cement packed in good order, four (4) sacks to the barrel, and of uniform weight of Ninety-Four (94) pounds net per sack, shipped from Belgium, April/May shipment, to this Country, to Pacific Coast Fort, Los Angeles Harbor, Partial Shipment to be allowed:

"Cement to be of a sound merchantable quality and standard of same shall meet with the requirements of the American Society for testing materials.

"Bills of lading must be drawn to 'order' and endorsed in blank.

"The amount of each draft must be endorsed on the back hereof.

"We agree with the drawers, Endorsers and Bona Fide holders of Drafts drawn under and in compliance with the terms of this Credit, that the same will be duly honored on presentation at the Continental National Bank of Los Angeles, California.

"Very truly yours,
"Continental National Bank,
"By signature,
"Vice President.
"Drafts must be marked:
" 'Drawn under L/C No. 151'
"By signature,
"Dated April 5, 1924. Manager Foreign Dept."

Plaintiff's sustained objection was to the materiality of the following stipulated facts: That part of the cement, shipped under other letters of credit, was removed on arrival, used in construction work, and found to be of inferior quality, and that the 60,000 bags shipped under the present letter which were stored in a warehouse in San Pedro until after the arrival of the documents were there sampled and tested by a firm of inspecting engineers, who reported that the cement failed to pass the specifications of the American Society for Testing Materials.

1. Appellee contends, in support of the ruling, that, as the issuer of a letter of credit is bound to accept drafts drawn under that letter when the documents presented conform to its terms, the question of actual conformity of the goods to the description in the documents is not material. Arguing that a letter of credit is a contract which must be construed strictly according to its terms, that whatever conditions the issuer may put into the letter must be fulfilled before he can be charged, appellant contends that the stipulated facts are material to prove that the alleged express condition that the cement should be of sound merchantable quality and standard and should meet with the requirements of the American Society for Testing Materials had not been fulfilled.

▓▓ When the transaction between the issuer of a letter of credit and the holder of drafts drawn thereunder is a documentary one, independent of the underlying sales contract between the purchaser and seller of the goods, as is ordinarily the case, it is well established that, if the documents are not in accordance with the specifications of the letter of credit, the bank of issue is justified in refusing to honor the draft. This is true even though the goods themselves may conform to the specifications of both the letter of credit and the sales contract. Crocker First Nat. Bank of San Francisco v. De Sousa, 27 F.(2d) 462 (C. C. A. 9th), certiorari denied 278 U. S. 650, 49 S. Ct. 94, 73 L. Ed. 561 (1928); Banco Nacional Ultramarino v. First National Bank of Boston, 289 F. 169 (D. C. Mass. 1923); Bank of Italy v. Merchants' National Bank, 236 N. Y. 106, 140 N. E. 211 (1923); National City Bank v. Seattle National Bank, 121 Wash. 476, 209 P. 705, 30 A. L. R. 347 (1922). Moreover, if the documents are in proper order, the bank of issue ordinarily may honor the drafts and charge the account of its customer, even though, before honoring, it is informed by its customer that the goods are unsatisfactory. Laudisi v. American Exchange Nat. Bank, 239 N. Y. 234, 146 N. E. 347 (1924); Tocco v. Bank of Italy, 249 Mass. 267, 143 N. E. 905 (1924).

The question whether or not under these circumstances the bank of issue must honor the drafts is, however, not so completely answered by prior decisions. The leading case on this specific question is Maurice O'Meara Co. v. National Park Bank of New York, 239 N. Y. 386, 146 N. E. 636, 639, 39 A. L. R. 747 (1925). There the bank had issued its letter of credit covering the shipment of newsprint paper in "rolls to test 11-12, 32 lbs." Although the documents presented included an affidavit attesting that the paper did test "twelve points, thirty-two pounds," the bank refused to honor the drafts presented by the seller because there had not been presented "evidence reasonably satisfactory to it that the newsprint was of the bursting or tensile strength specified in the letter of credit." In an action by the seller against the bank, the New York Court of Appeals held that the claim that the paper was not up to specifications was immaterial to the question of the bank's liability. The court said: "Whether the paper was what the purchaser contracted to purchase did not concern the bank and in no way affected its liability. It was under no obligation to ascertain, either by a personal examination or otherwise, whether the paper conformed to the contract between the buyer and seller. The bank was concerned only in the drafts and the documents accompanying them. This was the extent of its interest. If the drafts, when presented, were accompanied by the proper documents, then it was absolutely bound to make the payment under the letter of credit, irrespective of whether it knew, or had reason to believe, that the paper was not of the tensile strength contracted for."

From this view Judges Cardozo and Crane dissented. Judge Cardozo said: "I assume that no duty is owing from the bank to its depositor which requires it to investigate the quality of the merchandise. * * * I dissent from the view that, if it chooses to investigate and discovers thereby that the merchandise tendered is not in truth the merchandise which the documents describe, it may be forced by the delinquent seller to make payment of the price irrespective of its knowledge. We are to bear in mind that this controversy is not one between the bank on the one side and on the other a holder of the drafts who has taken them without notice and for value. The controversy arises between the bank and a seller who has misrepresented the security upon which advances are de-

manded. Between parties so situated payment may be resisted if the documents are false."

This decision was followed in Bank of East Asia, Ltd., v. Pang, 140 Wash. 603, 249 P. 1060 (1926), an action by the bank of issue against the seller to recover money paid under a letter of credit before discovery that the goods shipped were not according to specifications.

Whatever the rights of the seller in the O'Meara Case, it is clear from the minority as well as the majority opinion that a bank which had bought the paper from the seller without notice of the defects would have been protected. See, too, Second National Bank v. Columbia Trust Co., 288 F. 17, 30 A. L. R. 1299 (C. C. A. 3d, 1923).

■ One of the chief functions of the letter of credit is to substitute a bank credit for the buyer's credit, at least as to an innocent purchaser of the draft, to enable him to rely on the documents irrespective of claims, whether true or false, by the buyer that the goods are defective. See Finkelstein, Legal Aspects of Commercial Letters of Credit, with introduction by Llewellyn. These considerations are accentuated in respect to foreign letters of credit when, as here, bills of exchange with the documents attached are discounted by a bank operating in the seller's country. The transaction is in fact financed by the purchasing bank which, usually directly addressed by the issuing bank, knowing nothing of the buyer and perhaps nothing of the seller, acts entirely in reliance on the credit of the issuing bank. To hold that the issuing bank may refuse to honor because of the quality of the goods would throw the risks of the buyer's bad faith upon the party who would normally be less able to calculate it. Thus the conclusion that the bank of issue may not refuse to honor drafts because of the failure of the goods to comply with the documents is consistent with both the legal theory and commercial use of letters of credit.

Lamborn v. National Bank of Commerce, 276 U. S. 469, 48 S. Ct. 378, 379, 72 L. Ed. 657 (1928) and Old Colony Trust Co. v. Lawyers' Title & Trust Co., 297 F. 152, 153 (C. C. A. 2d, 1924), certiorari denied 265 U. S. 585, 44 S. Ct. 459, 68 L. Ed. 1192, are distinguishable on the facts. In the former case, the letter was drawn against a shipment of sugar from Java to Philadelphia, and required an "ocean bill of lading covering shipment Java to Philadelphia." The shipment was originally made "from Java 'to Port Said, option New York,'" but the boat actually went straight to Philadelphia. Consequently, as Mr. Justice Stone pointed out in his dissent, although the actual shipment fully complied with the contract, the bill of lading called for by the letter of credit could not have been presented. The court said, however, that this requirement had in fact been eliminated by agreement of the parties, and that "its inclusion in the letter must be deemed to have been inadvertent." Because of this disagreement on the evidence, the case cannot be deemed authority for the proposition that the actual performance of the sales contract rather than the presentation of the proper documents is controlling.

In the Old Colony Trust Co. Case, the letter of credit covered a shipment of "white Java sugars packed in bags of about two (2) cwt. each at twenty and one quarter cents (20¼¢) net landed weights, duly paid, per pound." The documents required were negotiable delivery order or negotiable warehouse receipt and invoice in triplicate. The court held that the bank of issue was justified in refusing the drafts because the invoice showing net landed weights and the warehouse receipt was false, since the sugar was not yet landed, weighed, or in the warehouse. The court said that the requirement of a warehouse receipt was "as if defendant trust company said, 'With your draft, deliver to us a truthful warehouse receipt which will inform us that the goods are in the warehouse.'" If this statement were intended to lay down a broad general principle, the issuing bank could always refuse to honor, if the goods did not in fact comply with the description in the documents. But that the court did not intend it to be so interpreted is indicated by its emphasis that an illegal warehouse receipt was no warehouse receipt at all, and also by its prefatory remark: "It would be dangerous if bankers or banking institutions who issue letters of credit were confronted with the problem of deciding anything more than whether or not the documents presented were the documents required under the letter of credit and whether the conditions in the letter of credit set forth were complied with."

■■ The court in the Old Colony Trust Co. case also relied to some extent on the alternative ground that the invoice was false in referring to net landed weights. With reference to this point, the court said: "In the case at bar, there were several requirements beside the presentation of the documents. The letter of credit, for instance,

required that the sugar should be 'white Java' and that drafts were to be drawn only against 'net landed weights.'" Similarly appellant contends that the language of the letter before us, properly interpreted, makes shipment of cement that in fact complies with the requirements of the American Society for Testing Materials, a condition of appellant's obligation. To accept this contention would practically undermine the general principle that the bank must honor the draft if the documents comply with the terms of the letter of credit, for any description of the goods in such a letter might quite as readily be interpreted to create such condition. Admitting that the issuer of a letter of credit may impose such a condition if it so wishes, it should be required at least to make such intention perfectly clear. While the clause here is slightly different from the mere description of the goods usually found in a letter of credit, it is no more a condition than the specifications of tensile strength in the O'Meara Case, supra. Appellant's contention that the clause, unless construed as requiring conformity of the goods, is meaningless, is met by the construction given to it by the seller as requiring not conformity in fact but some document, as a certificate or affidavit, that the goods are as specified in the letter of credit. We conclude that there was no error in the rejection of this evidence.

2. Appellant also assigns as error the refusal of its request for a declaration of law that, on the stipulated facts admitted in evidence, plaintiff, because of its failure to comply with the terms of the letter of credit, was not entitled to recover. Unless the request was made and its refusal excepted to "in the progress of the trial," as required by the statute we cannot consider the alleged error. Fleischmann Construction Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624 (1926); Arthur C. Harvey Co. v. Malley, 288 U. S. 415, 53 S. Ct. 426, 77 L. Ed. 866 (1933); Krumm v. Southwest Finance Co. of California, 67 F.(2d) 1 (C. C. A. 9th, 1933). It is settled that they come too late if made after judgment, even though the trial judge after judgment granted leave to make the request. Edwards v. Robinson, 8 F.(2d) 726, 727 (C. C. A. 9th, 1925); First National Bank of San Rafael v. Philippine Refining Corp., 51 F.(2d) 218 (C. C. A. 9th, 1931); Cronkleton v. Hall, 66 F.(2d) 384, 385 (C. C. A. 8th, 1933); but cf. McCandless v. Haskins, 28 F.(2d) 693 (C. C. A. 8th, 1928); Commonwealth Casualty Co. v. Aichner, 18 F.(2d) 879 (C. C. A. 8th, 1927).

In the instant case, while made after the entry of the trial judge's opinion with the order that "judgment be for plaintiff," they were made before the rendition on September 5th and the entry on September 6th of the judgment itself. The order of August 10th, we are satisfied, was neither intended nor regarded as the rendition of a judgment. It was the announcement by the trial judge that he had concluded to direct a judgment in favor of the plaintiff; the ordering part was "for a judgment" which he would thereafter direct as distinguished from a present judgment. Cf. G. Amsinck & Co., Inc., v. Springfield Grocer Co., 7 F.(2d) 855, 858–859 (C. C. A. 8th, 1925); Zadig v. Ætna Ins. Co., 42 F. (2d) 142, 143 (C. C. A. 2d, 1930); City and County of San Francisco v. McLaughlin, 9 F.(2d) 390 (C. C. A. 9th, 1925).

Nevertheless, the question remains whether or not rulings made and exceptions thereto taken, not merely after submission of the case, but even after the announcement by the court of its opinion and intended judgment, but before rendition of the final judgment, are made and taken "in the progress of the trial." In the opinion in Edwards v. Robinson, supra, an examination of the record discloses what is not entirely clear from the opinion, that there, as here, the declarations of law were requested some time after the judge had filed his opinion which concluded with the words "the complaint will be dismissed"—but also some time before the trial judge signed and filed the actual judgment of dismissal and his own findings. This court there said that no motion or request for a finding in favor of plaintiff was made "until long after the close of the trial, and not until 10 days after a decision in favor of the defendants had been announced by the court. Under such circumstances, we are without jurisdiction to consider the sufficiency of the testimony to support the findings." There are also expressions of opinion in other cases that, for these purposes, the progress of the trial is concluded when the cause is submitted to the judge, or at least when he announces his decision. See Babbitt Bros. Trading Co. v. New Home Sewing Machine Co., 62 F.(2d) 530, 535, 536 (C. C. A. 9th, 1932) (Judge Wilbur's concurring opinion); Merriam v. Huselton, 45 F.(2d) 983 (C. C. A. 8th, 1930); United States v. Smith, 39 F. (2d) 851, 854 (C. C. A. 1st, 1930); Southern Surety Co. of Des Moines v. United States, 23 F.(2d) 55, 58 (C. C. A. 8th, 1927); Ewert v. Thompson, 281 F. 449, 450 (C. C. A. 8th, 1922). This interpretation accords with the function of the request for ruling

and exception to the denial thereof; it is to direct the judge's attention to the specific proposition of law relied upon, so that prior to the announcement of his conclusions he may have the opportunity to consider it. True it is that after entry, and until the end of the term during which the judgment has been entered, it may be set aside and a new trial granted, or, if tried without jury, a contrary judgment entered. That, however, is a matter entirely within the court's discretion, and offers no guide to the scope of the general rule. We conclude that there were no rulings "in the progress of the trial," properly before us for review, other than that on the evidence hereinabove considered.

■ 3. The sufficiency of the special findings to sustain the judgment is reviewable without an exception whether they were made before or after judgment. South Utah Mines v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004 (1923); Palmer v. Aeolian Co., 46 F.(2d) 746 (C. C. A. 8th, 1931). While the Supreme Court has said that findings must be either general or special and cannot be both, British Queen Mining Co. v. Baker Silver Mining Co., 139 U. S. 222, 11 S. Ct. 523, 35 L. Ed. 147 (1891), the purported special findings in that case were in themselves formally improper. It has been held in some cases that, if a judgment is rendered on a general finding, it is immaterial whether special findings subsequently made are sufficient to support the judgment. Corliss v. Pulaski County, 116 F. 289 (C. C. A. 7th, 1902). See State National Bank of Ft. Worth v. Smith, 94 F. 605, 608 (C. C. A. 5th, 1899). This is, of course, so when the special findings are never entered upon the record, United States v. Cleage, 161 F. 85, 87 (C. C. A. 8th, 1908); or fail to state the ultimate facts, Streeter v. Sanitary District of Chicago, 133 F. 124 (C. C. A. 7th, 1904). But it has also been held that, when a judgment is rendered upon both general and special findings, it is the special findings which control. Wesson v. Saline County, 73 F. 917 (C. C. A. 7th, 1896). Cf. Austin v. Hamilton County, 76 F. 208 (C. C. A. 7th, 1896); Quinn v. Dimond, 72 F. 993, 995 (C. C. A. 9th, 1896).

 In the instant case, the order of August 10th was not intended as a general finding, but only as an expression of the court's then views, judgment was not rendered or entered upon it, and it was, in any event, superseded by the findings of September 5th, upon which judgment was rendered and entered. The concluding statement in these findings, that plaintiff was entitled to damages in the amount there specified, cannot be regarded as a general finding which renders nugatory the special findings. Wright v. Bragg, 96 F. 729 (C. C. A. 7th, 1899).

 We come then to consider the sufficiency of the facts as found by the court, to support the judgment entered thereon. It is not material whether in the findings, they are called ultimate facts or conclusions of law; we must ourselves determine which they are.

 The findings are sufficient to support the judgment if they show either that the documents complied with the letter of credit or that the defense of their noncompliance was effectively waived by defendant. The finding pertinent to the question of waiver reads as follows: "The Court finds that at no time did the Continental National Bank object in any manner to the form, nature or sufficiency of the documents accompanying the draft drawn by it under its letter of credit, and that the only ground that said Bank stated for its refusal to pay the draft issued under its letter of credit was that the cement itself was of inferior quality and did not comply with the requirements of the American Society for Testing Materials, and the Court finds that the said Bank, by formally placing its refusal to pay the said draft upon said grounds, waived all other defenses which it might have had for its failure to pay said draft."

 The conclusion that defendant "waived all other defenses" is in part at least a conclusion of law which we may not adopt unless it be the necessary deduction from the facts found by the court.

The doctrine of waiver in the federal courts stems from the case of Ohio & M. Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693 (1877), in which the court said: "Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

There is, however, conflict in the federal courts as to whether or not this principle of law applies when some or at least all of the elements of an estoppel are absent. In Mente v. De Witt Rice Mill Co., 251 F. 252, 253 (C. C. A. 8th, 1918), the defendant was allowed successfully to defend on grounds which had not been mentioned before because

the court found "no possible way in which defendant could have been benefited or plaintiffs have been damaged by the alleged 'change of hold.' * * * It is not a case of refusal to perform for some reason which plaintiffs might have removed, had they known of it, and thus secured performance." See, too, Galle v. Hamburg Amerikanische-Packetfahrt Action Gesellschaft, 233 F. 424 (C. C. A. 2d, 1916); G. Amsinck Co., Inc., v. Springfield Grocer Co., 7 F.(2d) 855, 859 (C. C. A. 8th, 1925); Griffin Grocery Co. v. Richardson, 10 F.(2d) 467, 473 (C. C. A. 8th, 1926); Lamborn v. Cleveland Trust Co., 29 F.(2d) 46 (C. C. A. 6th, 1928); Second National Bank of Allegheny v. Lash Corp., 299 F. 371 (C. C. A. 3d, 1924).

There are, however, other cases in which there was held to be an effective waiver, even though there was no possibility apparent that the plaintiff might have been misled or might have removed the objections had they been called to his attention. Luckenbach S. S. Co. v. W. R. Grace & Co., 267 F. 676 (C. C. A. 4th, 1920), certiorari denied 254 U. S. 644, 41 S. Ct. 14, 65 L. Ed. 454; Bank of Taiwan v. Union Nat. Bank of Philadelphia, 1 F.(2d) 65 (C. C. A. 3d, 1924); Grimwood v. Munson S. S. Line, 273 F. 166 (C. C. A. 2d, 1921); Robb v. Crawford, 56 App. D. C. 394, 16 F.(2d) 339 (1926). It has been suggested that there may be a proper distinction between cases in which the ground asserted to have been waived goes to the validity of the contract and those in which it concerns only the circumstances of the breach. See Boehmer Coal Co. v. Burton Coal Co., 2 F. (2d) 526, 529 (C. C. A. 8th, 1924). In the relevant cases in this circuit, the requirement that the plaintiff should have been misled to his damage has not been expressly stated, but it appeared from the facts that there was some possibility that he might have cured the defects had they been called to his attention, although perhaps not within the time limits of the contract. Polson Logging Co. v. Neumeyer, 229 F. 705 (C. C. A. 9th, 1916); Garcia & Maggini Co. v. Washington Dehydrated Food Co., 294 F. 765, 768 (C. C. A. 1924); George A. Moore & Co. v. Mathieu, 13 F.(2d) 747 (C. C. A. 1926).

Whether or not the waiver of other defenses is effective without elements of estoppel, we need not now determine. The court's finding that defendant waived all other defenses, a mixed finding of law and of fact, although reviewable as a conclusion of law, is binding as a finding of the ultimate facts, including that of defendant's knowledge of or opportunity for knowledge of, and intention to rely solely on, the stated defense, and to waive other alleged defects as conditions of performance. Furthermore, the other findings of fact, although not expressly directed to the question of waiver, support counsel's contention that the defects in the documents, had they been called promptly to plaintiff's attention, might have been remedied by Fatton's compliance with a cable request for a new shipment with new documents during the month of May, and thus within the time specified in the letter of credit. The findings of fact also indicate the possibility that the failure to mention the other objections may have induced plaintiff to rely upon its rights against defendant instead of promptly proceeding against the drawer of the dishonored drafts. These circumstances suffice to justify the application of the equitable doctrine of the McCarthy case. This conclusion makes it unnecessary to consider whether the stipulated documents sustain the trial court's conclusions that they substantially complied with the terms of the letter of credit, and therefore suffice, regardless of waiver, to support the judgment.

Judgment affirmed.