OPINION. Black, Judge-. The questions presented involve petitioner’s excess profits tax liability for the fiscal year ended May 31, 1941, under sub-chapter E of chapter 2 of the Internal Revenue Code, added by Title II, section 201, of the Second Revenue Act of 1940 as amended. Under code section 712, petitioner, in its return, elected to compute its excess jirofits credit under code section 714, under which section “The excess profits credit * * * shall be an amount equal to 8 per centum of the taxpayer’s invested capital for the taxable year, determined under section 715.” Code section 715 provides that “the invested capital for any taxable year shall be the average invested capital for such year, determined under section 716,” which, under section 716, “shall be the aggregate of the daily invested capital for each day of such taxable year, divided by the number of days in such taxable year.” Code section 717 provides that “The daily invested capital for any day of the taxable year shall be the sum of the equity invested capital for such day plus the borrowed invested capital for such day determined under section 719.” The controversy here concerns only petitioner’s average borrowed invested capital for the fiscal year ended May 31, 1941. The material provisions of code section 719 are set forth in the margin.[1] The material provisions of Regulations 112 are also set forth in the margin.[2] In its return petitioner claimed an average borrowed invested capital for the taxable year of $342,035. This amount was based upon the total daily balances of $249,685,575 set out in our findings, which latter amount was made up of the four different types of claimed borrowed capital also set out in our findings. In the deficiency notice the respondent determined that type (1), namely, “Banks’ outstanding letters of credit issued pursuant to petitioner’s applications aforesaid” in the total amount of approximately $155,822,150 (now stipulated to total $156,943,307), did not constitute borrowed capital, and, that, therefore, $213,455 (50 percent of $155,822,150 divided by 365) should be excluded from petitioner’s claimed average borrowed invested capital of $342,035. The pleadings placed in issue the correctness of this adjustment by the respondent. It is clear, therefore, that the first question presented is whether petitioner is entitled to include in the computation of its average borrowed invested capital under section 7|9 the outstanding irrevocable commercial letters of credit issued by the banks pursuant to petitioner’s applications for such letters of credit. In other words, the question is not limited to the effect of the applications alone, but includes the effect of the granting of the applications and the issuance of the letters of credit themselves. In the amended answer the respondent affirmatively alleged that he erred in not also determining that type (2), namely, “Banks’ accepted drafts, under the said letters of credit” in the total amount of $73,291,-127, did not constitute borrowed capital, and, that, therefore, $100,-398.80 (50 percent of $73,291,127 divided by 365) should also be excluded from petitioner’s claimed average borrowed invested capital of $342,035. The second question presented is, therefore, whether the respondent did so err as he has alleged. The question is not limited to the effect of the trust receipts that were executed by petitioner upon the acceptance of the drafts by the banks. We think the first question should be decided in favor of the respondent. Before we could hold that the letters of credit here involved constituted borrowed capital under code section 719, we would have to be of the opinion that such letters of credit represented “outstanding indebtedness * * * of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust.” We do not think the letters of credit here involved come within that provision of the statute. Petitioner contends (1) that the said letters of credit did represent outstanding indebtedness of the taxpayer; (2) that as such the letters of credit were in the nature of bonds, notes or bills of exchange; and (3) that if held to represent indebtedness of the taxpayer but not evidenced by any of the particular instruments specified in section 719, then the letters of credit were nevertheless includible within the scope of that section on the ground that the words “or any other written evidence of indebtedness” should in effect be read into section 719 (a) (1). Did the letters of credit here involved represent outstanding indebtedness of the petitioner? We do not think they did. A letter of credit has been defined as “a letter whereby one person requests some other person to advance money or give credit to a third person, and promises to repay the same to the person making the advancement.” Second Nat. Bank of Toledo v. Samuel & Sons, Inc., 12 Fed. (2d) 963; certiorari denied, 273 U. S. 720. The letters of credit here involved were all irrevocable. The bank’s obligation under such letters of credit is absolute and unconditional and is unaffected by the terms of the contract between the buyer and seller. Laudisi v. American Exch. Nat. Bank, 239 N. Y. 234; 146 N. E. 347. The bank can not even, on the buyer’s instructions, refuse to honor drafts drawn under such letters. Doelger v. Battery Park Nat. Bank, 201 App. Div. 515; 194 N. Y. S. 582. Petitioner’s obligation to the bank is to reimburse the latter for all payments made by the bank for petitioner’s account. This obligation is also absolute and unconditional. Cf. Pan-American Bank & Trust Co. v. National City Bank, 6 Fed. (2d) 762; certiorari denied, 269 U. S. 554. Under the contract between petitioner and the bank, the latter may demand that petitioner deposit with the bank the full amount of the letter of credit prior to the bank’s acceptance of any drafts drawn thereunder. Notwithstanding the definitiveness of these obligations of both the bank and petitioner, we do not think they represent an “indebtedness” as that term is used in section 719 until, at least, a draft has been drawn and accepted. As the Supreme Court said in Deputy v. DuPont, 308 U. S. 488, “But although an indebtedness is an obligation, an obligation is not necessarily an ‘indebtedness’ * * The letters of credit are for a definite period, and if during this period no drafts are drawn against the bank, the petitioner will not be required to pay the bank any more than the charge the bank makes for its issuance. Petitioner’s obligation under its contract with the bank may ripen into an indebtedness, but until it has done so we can not hold it to represent “outstanding indebtedness * * * of the taxpayer” as those words are used in section 719. During and prior to the taxable year petitioner did not carry the letters of credit on its books and in its financial statements as outstanding indebtedness. But that would not be controlling had it done so.. It is substance that counts and not mere bookkeeping We hold against petitioner on its first contention. Having decided contention (1) against petitioneer, it becomes unnecessary to decide the remaining contentions relative to the first question. If, however, we are wrong in our holding that the letters of credit do not represent “outstanding indebtedness * * * of the taxpayer,” then it is our opinion that such indebtedness, if it be indebtedness, is not evidenced by either a bond, note, or bill of exchange as petitioner contends under its second contention, and we have so found in our findings. Petitioner’s third contention under the first question, that the phrase “or any other written evidence of indebtedness” should in effect be read into section 719 (a) (1), was considered by us and rejected in Journal Publishing Co., 3 T. C. 518, and Flint Nortown Theatre Co., 4 T. C. 536. The second question raised by respondent by affirmative allegations in his answer presents a different situation. The question raised by these affirmative allegations is the legal effect of the drafts drawn under the letters of credit and accepted by the banks for petitioner’s account. The respondent concedes that these acceptances qualify as bills of exchange. See I. T. 3481, Internal Revenue Cumulative Bidle-tin 1941-1, p. 274. He contends, however, in his brief that: * * * A draft accepted by one of the banks with which petitioner transacted business became a bill of exchange, as to the bank, within the meaning of section 719 (a) (1) and would qualify as an indebtedness evidenced by a bill of exchange insofar as the bank is concerned. This does not mean that it would qualify as to the. petitioner also. Certainly both the petitioner and the bank would not be entitled to a borrowed invested capital credit on account of one purchase of merchandise or one accepted draft. We think that, when these drafts were accepted and the bills of lading turned over to petitioner, petitioner became indebted for the merchandise to the full extent of the drafts drawn and accepted. At that point the letters of credit had, to the extent of the acceptances, ripened into an absolute indebtedness in the form of the acceptances. True, the bank was liable for the indebtedness, but so was petitioner. It had been contracted for petitioner’s account and in a very true sense was petitioner’s indebtedness. Petitioner was the one that ultimately had to pay. We agree with the respondent to the extent that both the petitioner and the bank would not be entitled to a borrowed invested capital credit on account of one purchase of merchandise or one accepted draft, but we think that under the applicable statute, printed above in the margin, petitioner is the one that is entitled to the credit. The amount owing on the accepted draft was petitioner’s indebtedness. If the bank had failed to pay the accepted draft, petitioner would have been obligated to pay. Greenough v. Miunroe, 53 Fed. (2d) 362; certiorari denied sub nom. Irving Trust Co. v. Oliver Straw Goods Corporation, 284 U. S. 672. In fact the bank was entitled under its contract with petitioner to insist upon petitioner having sufficient funds on deposit with the bank to meet the accepted drafts as they became due. In order to satisfy the statute it is not enough for the indebtedness to be the “outstanding indebtedness * * * of the taxpayer.” It must also be “evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust.” The respondent concedes that the acceptances here in question qualify as bills of exchange, but he argues that they were the banks’ bills of exchange and not petitioner’s, and that this fact is fatal to petitioner’s claim for a borrowed invested capital as far as these acceptances are concerned. We do not think that this conclusion follows. The statute requires that the indebtedness has to be the indebtedness “of the taxpayer,” but it does not require that the specific type of instrument mentioned in the statute be that “of the taxpayer.” All that the statute requires is that the outstanding indebtedness of the taxpayer be “evidenced by” one of the specific types of instruments. We hold, therefore, that the respondent’s claim for an increased deficiency should be and is denied. Reviewed by the Court. A decision for the deficiency determined in the deficiency notice will be entered for the respondent. SEC. 719. BORROWED INVESTED CAPITAL. (a) Borrowed Capital. — The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest, and not including indebtedness described in section 751 (b) relating to certain exchanges) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust • * * * * * * * * * (b) Borrowed Invested Capital. — The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day. Sec. 35.719-1. Borrowed Invested Capital. — -The borrowed invested capital for any day of the taxable year is 50 per cent of the borrowed capital for such day determined as of the beginning of such day. Borrowed capital is defined to mean : (a) Outstanding indebtedness (other than interest, but including indebtedness assumed or to which the taxpayer’s property is subject) of the taxpayer which is evidenced by a bond, a promissory note, bill of exchange, debenture, certificate of indebtedness, mortage, or deed of trust * * * • * * * * * * In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit. If indebtedness of the taxpayer is assumed by another person it ceases to be borrowed capital of the taxpayer. For such purpose an assumption of indebtedness includes the receipt of property subject to indebtedness.