DECKER STEEL COMPANY, Plaintiff-Appellant,

v.

The EXCHANGE NATIONAL BANK OF CHICAGO, Defendant-Appellee.

No. 14369.

United States Court of Appeals Seventh Circuit.

April 3, 1964.

appellee, The Exchange Nat. Bank of Chicago.

George B. Rogers, Chicago, Ill., for The First National Bank of Chicago.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Decker Steel Company, sued Associated Steel Corporation, hereinafter called "Associated," the First National Bank of Chicago, hereinafter called "First National," and The Exchange National Bank of Chicago, hereinafter called "Exchange," in the United States District Court. Judgment was entered for plaintiff against Associated, which is bankrupt, and against plaintiff in favor of both banks. Plaintiff appealed the judgments against it, but agreed to dismissal of the appeal with respect to First National.

This case concerns letters of credit. Plaintiff, a steel broker in Grand Rapids, Michigan, contracted to buy from Associated, a steel broker in Chicago 500 tons of steel for delivery in December 1959 or January 1960.

Through the Old Kent State Bank of Grand Rapids, Michigan, which is not a party here, plaintiff caused an irrevocable letter of credit to be opened at the First National in favor of drawers, endorsers, and bona fide holders of drafts negotiable thereunder. This letter of credit was delivered to Associated. As required by plaintiff's contract with Associated, the letter of credit was assignable and divisible, calling for payment of $97,460 on presentation prior to February 29, 1960, of:

" * * * drafts accompanied by commercial invoices showing approximately 500 tons Prime Thomas quality 36 inch by coil hot rolled steel, railroad or truck clean bill of lading, issued to order of shipper, blank endorsed, notify Decker Steel Company, 1620 Turner Avenue, N. W., Grand Rapids 4, Michigan and showing shipment from New York, New York to Grand Rapids, Michigan."

Prentice H. Marshall, Clarold L. Britton, Chicago, Ill. (Thompson, Raymond, Mayer & Jenner, Chicago, Ill., of counsel), for plaintiff-appellant.

Jack Joseph, Albert Langeluttig, Chicago, Ill. (Brown, Dashow & Langeluttig, Chicago, Ill., of counsel), for defendant-

It was amended December 22, 1959, to make shipment from any east coast port or New Orleans acceptable.

Associated, in turn, applied for a letter of credit from Exchange which opened its irrevocable letter of credit dated December 28, 1959, in favor of Brown-Strauss Corporation, Kansas City, Missouri, not a party here. This letter of credit provided for payment to drawers, endorsers, and bona fide holders upon presentation on or before February 26, 1960, of:

"* * * signed clean railroad and/or trucking bills of lading made out to the order of The Exchange National Bank of Chicago * * * notify Associated Steel Corporation * * * signed commercial invoices, evidencing that the following merchandise has been loaded on rail cars and/or trucks at any of the U. S. East Coast Ports or at New Orleans, Louisiana: Approximately five hundred tons (of 2,000 lbs. each) Prime Thomas quality Hot Rolled Steel Coils .079 by 36 inch by coil * * *"

Exchange took an assignment of the First National letter of credit as security for its letter which was expressly made subject to the Uniform Customs and Practice of Commercial Documentary Credits fixed by the Thirteenth Congress of the International Chamber of Commerce.

By February, 1960, Associated had not yet delivered the steel to plaintiff. The price of steel declined about 25% between November 16, 1959 and February 26, 1960. Guy E. Decker, plaintiff's president, testified that he notified William C. Archer, salesman for Associated, during the first week of February, 1960, that the steel was late and delivery would no longer be accepted. This was, of course, all unknown to Exchange. The First National letter of credit provided that documents could be presented to and including February 29, 1960.

Mr. Decker further testified that although he refused to accept any delivery of the steel, he did, on an invitation from Mr. Archer, on or about February 23, 1960, accompany Mr. Archer to inspect some steel which was arriving in New Orleans.

On February 26, 1960, in the morning, Exchange received a telegram, from New Orleans, signed by Mr. Archer, which read:

"We wish to inform you we have made a physical inspection at the port of New Orleans of Materials Covered in Your Letter of Credit #5185 Issued to Brown & Strauss in Our Behalf for Hot Rolled Steel Coils as Described Therein Stop This stock in gauging from .073 to .085 Within the Individual Coils and 37" in width not 36" as indicated Stop Brown & Strauss are Releasing This Material to the Railroad Using Ocean Bills of Lading Description of .079 x 36" x coil as information for cutting of railroad bills of lading Stop This is not true and correct We therefore instruct you not to honor their documents as They do not reflect Accurate Dimensions of Materials Visually Inspected by Us Stop We understand that Railroad Bills of Lading are Being Prepared and Stamped in Chicago and Not at the Point of Shipment Which is New Orleans Stop Your Abiding by Our Instructions will be Appreciated Stop"

As indicated, the only specification in the First National letter of credit concerned width.

Abraham Lecker, manager of the foreign department of Exchange, telephoned David Fox, vice president of Associated, who said that he had received a similar telegram, that he did not know the dimensions of the steel involved, that he advised Mr. Lecker not to pay any attention to the telegram, and who in no way confirmed the statements made in the telegram from Associated's salesman, Mr. Archer.

About 3:00 p. m. of February 26, 1960, Brown-Strauss Corporation presented

documents to Mr. Lecker at Exchange. These documents conformed to the provisions of the irrevocable letter of credit which Exchange had issued, and Mr. Lecker accepted them.

Later that same afternoon, about 4:00 p. m., Mr. Lecker accompanied Mr. Fox to the railroad office, where Mr. Fox exchanged the bills of lading presented by Brown-Strauss for bills of lading showing Associated as consignee and showing steel 36″ in width. The District Court specifically found as a fact that this exchange was made for a proper business purpose, to avoid disclosure of Associated's source of the steel it was selling to plaintiff.

At this time Exchange did not know of any objections by plaintiff to performance of the contract. Unknown to Exchange, Mr. Decker on February 27, 1960, telegraphed First National that physical inspection showed the steel to be 37″ rather than 36″ as specified in the letter of credit, that plaintiff had refused delivery, and that plaintiff advised payment be likewise refused.

The District Court also found as a fact that in the steel industry "36-inch steel" includes by definition steel which actually measures 37″ in width.

About 9:00 a. m., on February 29, 1960, the day on which the First National letter of credit expired, Mr. Lecker, for Exchange, presented the bills of lading provided by Mr. Fox with Associated's draft and invoice, showing the steel delivered to be 36″ wide. The First National delivered its cashier's check for $97,341.81. Exchange drew its cashier's check for $87,893.28 payable to Brown-Strauss in payment of the latter's sight draft.

The steel was shipped to plaintiff at shipping charges of $12,000. Plaintiff's account was charged $97,341.81 for the First National check to Exchange. With notice to all the defendants, plaintiff sold the steel, reducing its damages to $43,008.71. The District Court, having found that Associated breached its contract by failing to deliver the steel on time, entered judgment against Associated in favor of plaintiff in the amount of $43,008.71.

The time of delivery was not a condition set out in the letters of credit, nor was it mentioned in the telegram from Mr. Archer, which Vice President Fox, in any event, had repudiated.

The District Court found that:

Under the facts and circumstances of the transaction complained of, the defendant The Exchange National Bank of Chicago,

A. was warranted in making payment under the letter of credit which it had issued in favor of Brown-Strauss Corporation of Kansas City, Missouri;

B. was warranted in presenting the documents for payment to the defendant The First National Bank of Chicago; and

C. was warranted in receiving payment under said letter of credit issued by The First National Bank of Chicago,

and accordingly, the charge that such presentation was wrongful is not sustained. The Exchange National Bank of Chicago irrevocably committed itself to pay value upon presentation of documents called for in its letter of credit at the time of the issue thereof on December 28, 1959; documents conforming to said letter of credit were presented to and accepted by The Exchange National Bank of Chicago prior to the expiration of its letter of credit on February 26, 1960, and actual payment was made on February 29, 1960, simultaneously with receipt of payment [from First National] * * *. The Exchange National Bank of Chicago is a bona fide holder in due course of the draft which it presented to the defendant First National Bank of Chicago and is a bona fide purchaser of the exchanged bills of lading; and * * *

The defendant The Exchange National Bank of Chicago was not at

any material time the agent of the defendant Associated Steel Corporation and is not charged with the knowledge of said defendant Associated Steel Corporation; is not responsible for breaches by said defendant Associated Steel Corporation of its contract of purchase and sale with Decker Steel Corporation; and had no notice of that contract or any of its terms and conditions at any material time.

Plaintiff's view as stated in its brief is that:

Exchange was not a holder in due course of the draft which it presented to First National and upon which it received payment. It was the assignee of Associated's interest under First National's letter of credit which was a non-negotiable chose in action. Exchange took its interest subject to any defenses and claims which were available against Associated. Having breached its contract with plaintiff, Associated was not entitled to receive payment. Exchange, standing in the same position as Associated, was not entitled to receive payment.

■ It is agreed that this Court will not set aside the findings of fact made by the District Court unless they are clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a). However, plaintiff asserts that on the facts as found by the District Court with respect to the actions of the parties, Exchange could not be a holder in due course. Plaintiff argues that Exchange must have been aware of the fact that the underlying consideration for the draft drawn by Associated payable to Exchange was a contract between plaintiff and Associated, and that by virtue of Mr. Archer's telegram, Exchange had actual notice of the dispute concerning performance.

Further plaintiff contends that Exchange had not paid value for the draft before receiving payment from First National.

■■ Exchange was in no sense a party to the contract between plaintiff and Associated. Exchange was the assignee of Associated's interest under the First National letter of credit, not of Associated's interest under the contract. The letters of credit described documents to be presented. The respective banks were not obligated to ascertain the existence or status of any dispute between the parties to the contract.

■ The actual time of payment made to Brown-Strauss is not conclusive as to the time of passage of value paid by Exchange for the draft. Exchange had given a valuable consideration when it irrevocably committed itself to pay upon presentation of the described documents. Exchange was bound at that time. Continental National Bank v. National City Bank, 9 Cir., 1934, 69 F.2d 312, 316, cert. den. 293 U.S. 557, 55 S.Ct. 69, 79 L.Ed. 659. In the situation before us, even in the absence of Vice President Fox's express repudiation of Mr. Archer's telegram, it cannot reasonably be said that the telegram gave Exchange such notice of a defense that Exchange might with impunity have refused to honor its own letter of credit.

We have carefully studied the cases cited by plaintiff and find them all distinguished on their facts from the case at bar. Exchange had not merely taken checks in deposit for collection. It had not engaged in a mere bookkeeping transaction which could be corrected. Exchange had given a valuable consideration by issuing an irrevocable letter of credit, in December 1959, long before any "defense" arose on the contract, let alone on the letters of credit with which the banks were solely concerned.

We find no error in the conclusions of law reached by the Trial Judge on the facts of this case.

■ As Exchange notes, it is a frequent practice for a bank to take an assignment of rights under one irrevocable letter of credit as security for issuance of another irrevocable letter of credit, commonly called a "back-to-back" letter

of credit. To impose on banks a duty to look beyond the documents required by the letter of credit and the conditions specified therein would not only unduly burden traditional banking operations, but would seriously hamper the conduct of business in general.

The judgment of the District Court is affirmed.

Affirmed.